136 S.W.3d 629 (2004)
In The Matter of J.P., A Juvenile.
No. 03-0266.
Supreme Court of Texas.
Argued February 4, 2004.
Decided May 14, 2004.
Robert James Kersey, Law Office of Robert Kersey, Granbury, for petitioner.
R. Kelton Conner, Chad Owen Bull, Assistant County Attorney Hood County, Granbury, for respondent.
John M. Vernon, Kirstin Donahue Dietel, Kirkpatrick & Lockhart LLP, Dallas, Allan Van Fleet, Vinson & Elkins, Houston, for Amicus Curiae Texas Appleseed.
*630 Justice BRISTER delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice OWEN, Justice O'NEILL, Justice JEFFERSON, Justice SCHNEIDER and Justice SMITH joined.
The trial court modified a prior juvenile order to commit J.P., an eleven-year-old boy, to the Texas Youth Commission (TYC). He appeals, arguing the trial court failed to make certain findings during modification that the statute expressly requires only in original commitment orders. We granted the petition because of a conflict in the courts of appeals on this question. We hold the plain words of the statute do not require the explicit findings J.P. demands.
At his original adjudication hearing,[1] J.P. was found to have engaged in delinquent conduct by (1) hitting and kicking a teacher at his school, (2) threatening to murder the teacher, an assistant principal, and some of his fellow students, and (3) threatening his mother a week later with a knife. Had he been an adult, these offenses could have constituted, respectively, a third-degree felony,[2] a Class A misdemeanor,[3] and a second-degree felony.[4]
J.P. was placed on one year's probation in the custody of his parents. Four days later, sheriffs deputies were called to his home and found him breaking out windows with a broom handle. He was taken into custody, and shortly thereafter agreed (with the approval of his appointed attorney) to an order modifying his probation to provide for placement at the Hood County Regional Detention Center. After a number of incidents at the detention center, the disposition was again modified on April 22, 2002 to commit J.P. to TYC. He appeals from this last order.
The Legislature provided different rules for different stages of a juvenile proceeding. An adjudication hearing incorporates many of the features of a criminal trial, including the right to a jury trial, the right to remain silent, and the right to exclude evidence inadmissible under the rules governing criminal proceedings.[5] By contrast, at a disposition hearing after adjudication, a juvenile has a right to a jury only in cases of possible transfer to the Texas Department of Criminal Justice, and written reports may be considered even if the author does not testify.[6] Finally, at a hearing to modify disposition, there is no right to a jury trial at all.[7]
The Legislature also provided for differences in disposition orders depending on the stage of the proceedings. In all such orders, the court must state in writing its reasons for the order and furnish a copy to the child.[8] But if an initial disposition order places a child in TYC or on probation outside the home, it must expressly state that (1) removal from the home is in the child's best interests, (2) reasonable efforts were made to avoid removal, and (3) care and supervision the child needs to meet the conditions of probation cannot be provided at home.[9] By contrast, none of *631 these additional findings is expressly required in a modification order, which instead can provide for commitment to TYC if (1) the original disposition was for conduct constituting a felony or multiple misdemeanors, and (2) the court finds the child violated a reasonable and lawful order of the court.[10]
J.P. first argues that the modification order had to include written findings regarding best interests, reasonable efforts, and quality of in-home care. In drafting the Family Code (and other statutes as well), the Legislature often requires judges to "find" certain matters before taking certain actions,[11] but only occasionally requires those findings to be made in writing.[12] Here, the Legislature required several written findings in original orders, but did not require them in modified orders. We cannot interpret the statute to require otherwise without rewriting it.
Alternatively, J.P. argues that before making the modification order, the trial court had to make the same findings as would have been required for an original order, even if they did not have to be written into the modification order. He also argues the modification order here was improper because there was insufficient evidence to support these necessary but implied findings.[13]
As noted, the plain language of the Family Code requires written findings regarding best interests, reasonable efforts, and quality of in-home care in an original disposition order, but not in a modified one. We must give effect to this difference in plain language unless doing so *632 violates other provisions of the statute.[14] Several appellate courts, including the court of appeals in this case, have held it does not.[15]
But the Eighth Court of Appeals has held to the contrary, requiring trial courts to make each of these findings and state them expressly in modification orders committing a juvenile to TYC.[16] The court appeared to have two main concerns about applying the statute as written.
First, the court feared children could be removed from their homes and placed in TYC for probation infractions without considering their best interests or alternative arrangements.[17] But it must be kept in mind that no original disposition of any kind could have been made unless the best interests of the child indicated protection or rehabilitation was needed.[18] Further, the act of modification itself indicates an in-home alternative has been tried, and undoubtedly most trial courts would find these efforts reasonable because they ordered them. Finally, by finding a violation of probation, a court necessarily finds that in-home supervision was insufficient to ensure there were no such violations. Given the circumstances in which modified orders of commitment arise, the Legislature could have decided separate findings regarding the child's best interests and alternative arrangements were not necessary because they were necessarily included.
Second, the court feared that effective appellate review of commitment orders based on minor infractions would be precluded if the order simply stated that the child "violated a reasonable and lawful order of the court."[19] But the statute does not require commitment to TYC for every probation violation; it provides only that a trial court's disposition "may be modified" in such circumstances.[20] This is a discretionary decision, and subject to review for abuse of that discretion. If a trial court arbitrarily removes a child from home for a trivial infraction, nothing in the statute prohibits the appellate judges of Texas from doing something about it.
Finally, neither of these concerns addresses what the Juvenile Justice Code itself indicates is its primary concern B the safety of the public:
51.01. Purpose and Interpretation
This title shall be construed to effectuate the following public purposes:
(1) to provide for the protection of the public and public safety;
(2) consistent with the protection of the public and public safety:
(A) to promote the concept of punishment for criminal acts;
(B) to remove, where appropriate, the taint of criminality from children committing certain unlawful acts; and
(C) to provide treatment, training, and rehabilitation that emphasizes the *633 accountability and responsibility of both the parent and the child for the child's conduct;
(3) to provide for the care, the protection, and the wholesome moral, mental, and physical development of children coming within its provisions;
(4) to protect the welfare of the community and to control the commission of unlawful acts by children;
(5) to achieve the foregoing purposes in a family environment whenever possible, separating the child from the child's parents only when necessary for the child's welfare or in the interest of public safety and when a child is removed from the child's family, to give the child the care that should be provided by parents; and
(6) to provide a simple judicial procedure through which the provisions of this title are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.[21]
In other parts of the Family Code, the best interests of children are often paramount; but in the Juvenile Justice Code, the best interests of children who engage in serious and repeated delinquent conduct are superseded to the extent they conflict with public safety.
Commitment to TYC by modification order is proper only if a juvenile originally committed a felony or multiple misdemeanors, and subsequently violated one or more conditions of probation.[22] In such circumstances, the statute allows a trial court to decline third and fourth chances to a juvenile who has abused a second one.
Here, the evidence at the modification hearing showed that J.P. assaulted detention center officers, created a flood by plugging his toilet, assaulted other residents, and on several occasions threatened to commit suicide. On the other hand, there was evidence the death of his father shortly after he entered the detention center contributed to the deterioration of his behavior, and a grandfather from New Hampshire indicated willingness to raise J.P. there. The trial judge's comments indicate careful consideration of J.P.'s circumstances, of possible alternatives to commitment, and of potential dangers each option provided. Given J.P.'s original adjudication of delinquency for serious offenses (which he does not contest), the previous commitment to the Hood County Detention Center for further delinquent conduct (which he does not contest), and the many offenses at the Center (which he excuses but does not contest), we hold the trial court did not abuse its discretion in modifying the previous disposition orders to commit J.P. to TYC.
The plain language of the Juvenile Justice Code requires different findings in initial orders committing a juvenile to TYC than in modified orders that do so. For the reasons stated above, applying the statute as written compels neither arbitrary commitment nor meaningless review. Accordingly, we affirm the judgment of the court of appeals.
Justice SCHNEIDER filed a concurring opinion, in which Justice O'NEILL and Justice JEFFERSON joined.
Justice WAINWRIGHT concurred in the judgment only.
*634 Justice SCHNEIDER, joined by Justice O'NEILL and Justice JEFFERSON, concurring.
I join the Court's opinion but write separately to express my concern and bring to the Legislature's attention the result that the statute could have in certain circumstances.
A plain reading of subsections 54.04(I), 54.05(f), and 54.05(k) allows a juvenile that has committed a relatively minor infraction to be committed to TYC without a finding by the trial court that such disposition is in his or her best interests or necessary to protect the public safety. Tex. Fam.Code § 54.04(I) and 54.05(f), (k). As Justice Rickhoff has emphasized, In re H.G. provides one such example. 993 S.W.2d 211, 215 (Tex.App.San Antonio 1999, no pet.) (Rickhoff, J., concurring). There, the juvenile was initially adjudicated for criminal mischief, $20-500. Id. His initial disposition resulted in six months of home probation. Id. While serving that probation, his disposition was modified, and he was committed to TYC. The acts that resulted in his committal were failing to attend the required probation counseling because his father "did not approve of it" and failing to pay restitution because his mother vetoed his job prospect. Id. I agree with Justice Rickhoff that such acts alone should not warrant commitment to an institutional juvenile facility without a finding that it is in the child's best interest. Yet, under this statute, the trial court was within its discretion in committing the child in In re H.G. to TYC without that finding.
The Court here emphasizes that "[i]f a trial court abuses its discretion by arbitrarily removing a child from home for trivial infractions, nothing in the statute prohibits the appellate judges of Texas from doing something about it." 136 S.W.3d 632. While this may be true, results like that in In re H.G. suggest that the amount of discretion afforded trial courts in this area is exceedingly broad. And nothing in the statute or in our opinion today gives sufficient guidance to trial courts on how to deal with those cases that are on the margins.
TYC is the most severe form of incarceration contemplated in the juvenile justice scheme for an eleven-year-old child. Historically, the Legislature has expressed its intent that the commitment be reserved for only serious juvenile offenders. See, e.g., Criminal Justice Policy Council, The Changing Profile of the Texas Youth Commission Population 4 available at www.cjpc.state.tx.us/reports/alphalist/index.html (Sept.1996). For one, a juvenile commitment, away from the child's family, will undoubtedly have a permanent, lasting effect on any child that goes to TYC. Also, the Legislature has not overlooked the fact that TYC commitment costs the State over $50,000 a year per child. See Criminal Justice Policy Council, Mangos to Mangos: Comparing the Operating Costs of Juvenile and Adult Correctional Programs in Texas 10, 12 (Jan.2003), available at www.cjpc.state.tx.us/reports/alphalist/index.html.
In certain cases, sending a child to TYC may provide a more proper environment and be in that child's best interests. However, I find it hard to believe that the Legislature intended for children that committed only minor infractions to be sent to TYC without first finding that it is in the child's best interests. But on its face, this statute allows that result.
As the Court points out, the first purpose of the juvenile justice code is to provide for the protection of the public safety. Tex. Fam.Code 51.01(1). If a child poses a legitimate physical threat to those around him or her, TYC is a proper alternative. However, not all children that may be committed to TYC under this statute pose *635 such a threat. Consistent with protecting the public, the code also encourages "separating the child from the child's parents only when necessary for the child's welfare or in the interest of public safety." Tex. Fam.Code 51.01(5). Thus, according to this purpose, it appears that the Legislature intended for the child's interests to be considered before separating the child from his parents and sending him to TYC. But, as we properly hold today, the plain wording of the statute does not require this when juvenile dispositions are being modified. See Tex. Fam.Code 54.05. I would urge the Legislature to reevaluate this statute and to change it if the Legislature intended to require more before committing a child to TYC.
NOTES
[1] See Tex. Fam.Code § 54.03.
[2] Tex. Penal Code art. 22.01(b)(1).
[3] Id. art. 22.07(b).
[4] Id. art. 22.02(b).
[5] See Tex. Fam.Code § 54.03(b).
[6] Id. § 54.04(a), (b).
[7] Id. § 54.05(c).
[8] Id. §§ 54.04(f), 54.05(i).
[9] Specifically, Family Code section 54.04(i) states:

If the court places the child on probation outside the child's home or commits the child to the [TYC], the court:
(1) shall include in its order its determination that:
(A) it is in the child's best interests to be placed outside the child's home;
(B) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and
(C) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation....
Original disposition orders also must include (where applicable) any terms of probation and whether a deadly weapon was used. Id. § 54.04(f), (g).
[10] Id. § 54.05(f), (k).
[11] See, e.g., id. § 6.602(d) (providing court may overrule objection to mediation in divorce proceedings only if it finds a preponderance of the evidence does not support the objection); § 55.32(a) (providing juvenile court must hold hearing if it finds evidence exists supporting child's unfitness to proceed due to mental illness or retardation); § 153.004(d)(1) (providing court may allow access to child by parent with recent history of family violence only if it finds access will not endanger child).
[12] See, e.g., id. § 6.711(a) (requiring written findings when requested after divorce judgment dividing parties' estates); § 7.006(b) (providing court may quote agreement incident to divorce or incorporate it by reference in final order if agreement is just and right); § 33.003(h) (requiring written findings and conclusions in parental notification cases); § 54.02(h) (requiring juvenile court to state reasons in order waiving jurisdiction in favor of criminal district court); § 153.072 (requiring written finding of child's best interest before limiting rights of parent appointed as conservator).
[13] J.P. raises no constitutional challenge to the order of proceedings here. Although amicus counsel argues that federal statutes require inclusion of the section 54.04(d) findings in the statement of reasons required by section 54.05(i), the only statutes cited in briefs or oral argument relate to removal of a child for parental abuse or neglect, not for delinquent acts of the children themselves, see 42 U.S.C. §§ 671, 675. We are given no explanation or authority as to why they apply here.
[14] See Tex. Gov't Code §§ 311.023, 311.025; McIntyre v. Ramirez, 109 S.W.3d 741, 745 (Tex.2003).
[15] ___ S.W.3d ___, 2003 WL 151982; In re D.R.A., 47 S.W.3d 813, 814-15 (Tex.App.-Fort Worth 2001, no pet.); In re M.A.L., 995 S.W.2d 322, 324 (Tex.App.-Waco 1999, no pet.); In re H.G., 993 S.W.2d 211, 214 (Tex. App.-San Antonio 1999, no pet.).
[16] In re L.R., 67 S.W.3d 332, 337 (Tex.App.-El Paso 2001, no pet.).
[17] Id. at 336.
[18] See Tex. Fam.Code § 54.04(c).
[19] In re L.R., 67 S.W.3d at 337; see In re H.G., 993 S.W.2d at 215 (Rickhoff, J., concurring).
[20] See Tex. Fam.Code § 54.05(f) (emphasis added).
[21] Id. § 51.01.
[22] Id. § 54.05(f), (k).