# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=====
NO. 03-06-00433-CV
=====

**In the Matter of L. T. H.**

=====
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. J-24,907, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**
=====

## M E M O R A N D U M   O P I N I O N

The juvenile court committed L.T.H. to the Texas Youth Commission ("TYC") after L.T.H. pleaded true to a probation violation. In two points of error, L.T.H. asserts that the order modifying his disposition failed to specifically state the reasons for the modification and that the district court abused its discretion in committing L.T.H. to TYC. We affirm the order.

## BACKGROUND

On April 21, 2005, the juvenile court, after finding that L.T.H. had engaged in delinquent conduct by committing the offense of assault, placed L.T.H. on probation for nine months. On September 7, 2005, the State moved to modify the disposition, alleging that L.T.H. had violated a condition of his probation by failing to report to his probation officer. On October 6, after hearing evidence on the State's motion, the juvenile court modified the disposition, extending the probation until May 2006.

As a term and condition of his probation, L.T.H. was required to be inside the residence of his grandparents between the hours of 9:00 p.m. and 6:00 a.m. On February 28, 2006, the State moved to modify the disposition, alleging that L.T.H. failed to comply with this condition from November 1, 2005 to the date of the motion. At the July 6, 2006 modification hearing, L.T.H. pleaded true to the State's allegation.

Following L.T.H.'s plea, the juvenile court heard evidence from Cathy McClaugherty, a caseworker with the Travis County Juvenile Probation Department. McClaugherty testified that the department's recommendation was commitment to TYC. McClaugherty explained the department's reasoning to the juvenile court. After L.T.H. was placed on probation, L.T.H. had first spent 90 days in the department's "Impact Program," which is a "brief behavior modification program." Upon completion of that program, L.T.H. was allowed to return home. However, according to McClaugherty, L.T.H. "has absconded at least twice for a period of time." Additionally, the "family has a history of moving without notifying the Probation Department." McClaugherty continued,

> We've . . . had psychological evaluations completed, attempted to engage the family in services through MHMR. We've also attempted to hook him up, if you will, with Southwest Key tracking to improve his accountability. And we've also tried an electronic monitor to improve his accountability and to get him to stay at home.

All of these efforts, McClaugherty testified, were unsuccessful in keeping L.T.H. at home.

When asked by the juvenile court if there were any other reasonable efforts that might be taken by the department, McClaugherty replied, "None that I'm aware of at this time. We've also

attempted to staff him for our Intensive Supervision Probation program. And he was declined based on a history of both him and his family not cooperating and not following through with probation."

McClaugherty also testified that she believed commitment to TYC would be in the child's best interest because L.T.H. "has difficulty functioning in the community. We have not been able to get him to engage in probation." McClaugherty also believed that commitment to TYC was in "the community's best interest" because L.T.H.'s "offenses speak to the fact that he appears to be a danger to other people in the community."

On cross-examination, McClaugherty testified that the offenses to which she was referring were two misdemeanor assaults involving L.T.H.'s "peers at school." L.T.H. had never been accused of a felony offense, and L.T.H.'s last alleged misdemeanor assault occurred prior to his probation, in February 2005. McClaugherty also acknowledged that L.T.H. had been diagnosed as suffering from mild mental retardation and "cannibis abuse."

On redirect, McClaugherty testified that because of L.T.H.'s "absconder status," L.T.H. had been unavailable and out of contact with the department for approximately six months during the previous year. The juvenile court inquired as to the reason the department was unable to find L.T.H., and McClaugherty explained that during the period of time when he absconded, attempts were made to locate the family at their last known address. The department discovered that the family had moved but was unable to obtain a new address.

L.T.H.'s grandmother was present at the hearing but, when given the opportunity by the juvenile court to speak, declined the opportunity. L.T.H.'s uncle, who had been considered as a possible placement, was not present at the hearing.

3

At the conclusion of the hearing, the juvenile court committed L.T.H. to TYC. This appeal followed.

## DISCUSSION

**Specificity of the juvenile court's order**

In his first point of error, L.T.H. asserts that the juvenile court's order was deficient because it failed to specifically state the reasons for the modification of the prior disposition. Section 54.05(i) of the family code provides, "The court shall specifically state in the order its reasons for modifying the disposition and shall furnish a copy of the order to the child." Tex. Fam. Code Ann. § 54.05(i) (West Supp. 2006). Section 54.05(m) requires that the juvenile court's order committing a child to the TYC include a determination that:

(A)     it is in the child's best interests to be placed outside the child's home;

(B)     reasonable efforts were made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for the child to return home; and

(C)     the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.

*Id*. § 54.05(m) (West Supp. 2006).

The modifying order must specifically recite the conduct which prompted the trial court to modify its prior order of disposition. *K.W.H. v. State*, 596 S.W.2d 248 (Tex. Civ. App.—Texarkana 1980, no writ). Providing specific reasons for the disposition provides the child with notice of the court's reasons so that the child can determine the need for an appeal. *In re*

*J.R.*, 907 S.W.2d 107, 110 (Tex. App.—Austin 1995, no writ). Additionally, a record is created for the appellate court to rely on in making its decision about whether sufficient evidence supports the juvenile court's findings and determinations. *In re L.R.*, 67 S.W.3d 332, 336-37 (Tex. App.—El Paso 2001, no pet.). Therefore, merely reciting statutory language will not be sufficient to justify the juvenile court's ruling. *In re J.T.H.*, 779 S.W.2d 954, 959 (Tex. App.—Austin 1989, no writ). However, statutory language supplemented by additional findings is sufficient to meet the requirements of the family code. *See In re P.L.*, 106 S.W.3d 334, 338 (Tex. App.—Dallas 2003, no pet.) (order tracking language of section 54.05 and explaining court's reasons was appropriate). The inclusion of the offense and its surrounding circumstances in an order consisting of mainly statutory language is sufficient. *J.T.H.*, 779 S.W.2d at 959.

In this case, the juvenile court's order specified that L.T.H. violated the condition of probation requiring him to "be inside the residence of [his] grandparents each day between 9:00 p.m. and 6:00 a.m., unless accompanied by [his] parent or guardian." The order further specified that L.T.H. "failed to be inside the residence of his [grandparents] on November 1, 2005 to present." Additionally, the order specified that L.T.H. "will not accept parental supervision and has demonstrated a disregard for all authority." The order then recited the necessary statutory language:

> [L.T.H.], in [L.T.H.]'s home, cannot be provided the quality of care and level of support and supervision that [L.T.H.] needs to meet the conditions of probation. All reasonable efforts were made to prevent or eliminate the need for [L.T.H.]'s removal from home and to make it possible for [L.T.H.] to return home. The Court further finds that [L.T.H.] has been removed from his home and the Court approves of the removal. The Court further finds that the local resources of this Court are not adequate to meet such needs or accomplish the necessary protection of the public.

5

It therefore appears to the Court that the best interest of [L.T.H.] and of society will be served by committing [L.T.H.] to the care, custody, and control of the Texas Youth Commission.

In addition to reciting the necessary statutory language provided for in section 54.05(m), *see id.*, the order complies with section 54.05(i) by specifically stating the reasons for modifying the disposition. L.T.H. "failed to be inside the residence of his [grandparents] on November 1, 2005 to present," which was a direct violation of one of the conditions of his probation. Additionally, the order specified that L.T.H. "will not accept parental supervision and has demonstrated a disregard for all authority." Finally, the juvenile court specified that the best interest "of society" would also be served by committing L.T.H. to TYC. *See J.T.H.*, 779 S.W.2d at 959 (holding that juvenile court's "listing of protection of the public as a factor" in committing juvenile to TYC, when combined with other reasons, satisfied specificity requirement). We hold that the order satisfies the specificity requirement of section 54.05(i). We overrule L.T.H.'s first point of error.

**Commitment to TYC**

In his second point of error, L.T.H. contends that the juvenile court abused its discretion in committing appellant to the Texas Youth Commission. Section 54.05(j) of the family code provides that:

If, after conducting a hearing to modify disposition without a jury, the court finds by a preponderance of the evidence that a child violated a reasonable and lawful condition of probation ordered under Section 54.04(q), the court may modify the disposition to commit the child to the Texas Youth Commission under Section

6

54.04(d)(3) for a term that does not exceed the original sentence assessed by the court or jury.

Tex. Fam. Code Ann. § 54.05(j) (West Supp. 2006). L.T.H. concedes that the evidence is legally and factually sufficient to find that he violated a condition of his probation. However, he contends that the juvenile court's decision was "arbitrary and unreasonable" because the violation was "not his fault." L.T.H. argues that because his family has a "history of moving without notice to the probation department" and because he is "mildly mentally retarded," the probation violation was "out of his realm of control." L.T.H. further argues that commitment to TYC is usually "reserved for only serious juvenile offenders." *See In re J.P.*, 136 S.W.3d 629, 634 (Tex. 2004) (Schneider, J., concurring).

We review decisions to commit juveniles to TYC for abuse of discretion. *Id*. at 632. "Juvenile courts are vested with a great amount of discretion in determining the suitable disposition of children found to have engaged in delinquent conduct, and this is especially so regarding hearings to modify disposition." *In re K.B.*, 106 S.W.3d 913, 915 (Tex. App.—Dallas 2003, no pet.). "Under an abuse of discretion review, we reverse the trial court only if the trial court has acted in an unreasonable or arbitrary manner." *Id*.

We cannot conclude that the juvenile court abused its discretion in committing L.T.H. to TYC. L.T.H. pleaded true to violating a condition of his probation. This was the second time that the juvenile court had found that L.T.H. violated a condition of his probation. At the modification hearing, the juvenile court heard evidence that the department had attempted several methods to keep L.T.H. at home, but that none of those methods had succeeded. The juvenile court

7

also heard evidence that L.T.H.'s family had a history of not cooperating with the probation department, and the juvenile court could reasonably infer from this evidence that there would be subsequent violations of probation if L.T.H. remained under the supervision of his grandparents. While L.T.H. did argue that his uncle was perhaps a more suitable placement, his uncle did not show up at the hearing.

Although L.T.H. asserts that his "mild mental retardation" and his family's role should excuse his probation violations, he does little to elaborate on these arguments and the juvenile court could have concluded otherwise on this record. As for L.T.H.'s argument that TYC is reserved for "more serious offenders," we note that L.T.H. was originally placed on probation for committing two misdemeanor assaults and we will not second-guess the juvenile court's judgment call. On this record, we hold that the juvenile court did not abuse its discretion in committing L.T.H. to TYC. We overrule L.T.H.'s second point of error.

## CONCLUSION

We affirm the order of the juvenile court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   September 6, 2007

8