# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00892-CV

**In the Matter of J. G.**

FROM THE COUNTY COURT AT LAW NO. 1 OF BELL COUNTY,
NO. 66633, HONORABLE EDWARD S. JOHNSON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The trial court modified a prior juvenile order to commit J.G., a fifteen-year-old boy, to the Texas Youth Commission (TYC) for an indeterminate amount of time not to exceed his nineteenth birthday.[1] On appeal, J.G. contends the trial court abused its discretion by committing him to the TYC rather than to a "less restrictive" placement in a boot camp. We will affirm.

## BACKGROUND

J.G. was referred for juvenile-delinquency proceedings based on allegations that he (1) elbowed a teacher's aide in the stomach and (2) scratched, resisted, and repeatedly slapped the arm of another school employee. J.G. stipulated to the evidence of these charges, and on July 15, 2010, he was adjudicated delinquent for two counts of assault on a public servant, a third-degree felony, and placed on probation for one year in his mother's custody. *See* Tex. Penal

---

[1] The TYC was abolished on December 1, 2011, and its powers and duties were transferred to the Texas Juvenile Justice Department. Act of May 19, 2011, 82d Leg., R.S., ch. 85 § 4.001(b), 2011 Gen. Laws 1, 441.

Code Ann. §§ 22.01(b) (assault on a public official), .02 (enhancing penalty for assault with bodily injury) (West 2011).

Nearly a year later, the State filed a motion to modify the disposition based on J.G.'s failure to comply with the terms of probation—specifically, failing to report to his probation officer on at least five occasions in the preceding three-month period, missing at least fourteen days of school without excuse in the preceding two-month period, and violating school rules on four occasions in the preceding month. Based on these violations, and with the agreement of the parties, the trial court extended J.G.'s probation for six months and placed him back in his mother's custody. *See generally* Tex. Fam. Code Ann. § 54.05 (West Supp. 2012) (authorizing trial court to modify prior disposition, including extending period of probation).[2]

Shortly thereafter, and on the State's motion, J.G. was placed in a juvenile detention center based on further probation violations, including multiple unexcused absences from school, four violations of school rules, and a curfew violation. While J.G. was in custody, he was repeatedly written up for major and minor infractions. As a result, the State filed a second motion to modify the disposition, requesting that J.G. be committed to the TYC.

At the hearing on the motion to modify, J.G. pleaded true to the probation violations. The court heard evidence that J.G. had been unable to comply with the terms of probation while in his mother's care, including the requirement that he consistently take medications prescribed for his mental-health and behavioral issues. The court also heard evidence that a structured and supervised

---

[2] Section 54.05 was amended effective September 1, 2011, but the changes, although substantive, are not germane to the issues in this appeal. Accordingly, we cite the current version of the statute for convenience.

environment was necessary for treatment and was in J.G.'s best interest, but that J.G. had been unsuccessful in maintaining appropriate behavior even in the structured juvenile-detention-center environment. In that regard, the evidence was undisputed that J.G. had been repeatedly written up for both major (31 incidents) and minor (44 incidents) infractions during his 82-day stay at the detention center. Those incidents included physical aggression toward staff, flooding his cell on multiple occasions, attempting to obscure observation of his actions in his cell by covering the windows, using inappropriate language with staff and peers, and inciting his peers. Probation Officer James Mejias further testified that J.G. had twelve previous referrals for delinquent conduct and that, even in the detention-center environment, he "has not done well. He refuses to comply with the program. He shows extreme levels of defiance and disrespect." Consequently, Mejias recommended that J.G. be placed in the TYC because he needs a greater level of structure than can be provided in the community.

On cross-examination, Mejias conceded that J.G. was not taking his prescribed medications while at the detention center because his prescriptions had expired and his mother had failed to make an appointment for J.G. to be reevaluated by his physicians. Mejias had no opinion as to whether J.G. could be successful in a boot camp if properly medicated, but he observed that J.G. was not doing well in his mother's care even when he was taking medication as prescribed.

J.G.'s mother confirmed both that J.G. had been taking his medication when he violated probation and that he was so resistant to taking his medication that he would throw it away on occasion. Nevertheless, she believed that J.G. would do well in a structured environment like a boot camp and asked the court to consider that as a less-restrictive placement.

3

The court found that J.G. violated the terms of his probation and ordered that he be committed to the custody of the TYC for an indeterminate period not to extend past his nineteenth birthday. J.G. appeals from the last modification order, contending that the trial court abused its discretion in committing him to the TYC rather than placing him in boot camp, which J.G. contends is an appropriate, less-restrictive placement.

**BACKGROUND**

Commitment to the TYC by modification order is proper only if a juvenile originally committed a felony and subsequently violated one or more conditions of probation. *Id.* § 54.05(f). If the court modifies a prior disposition, the court "shall specifically state in the [modification] order its reasons for modifying the disposition." *Id.* § 54.05(i). If the court places the child on probation outside the child's home or commits the child to the TYC, the order must further include findings that (1) it is in the child's best interests to be placed outside the child's home, (2) reasonable efforts were made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for the child to return home, and (3) the child cannot, in the child's home, be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. *Id.* § 54.05(m).

If these conditions are satisfied, an appellate court will not disturb a district court's determination of a suitable disposition for a child who has engaged in delinquent conduct, absent an abuse of discretion. *See In re J.P.*, 136 S.W.3d 629, 632 (Tex. 2004); *In re A.I.*, 82 S.W.3d 377, 379-80 (Tex. App.—Austin 2002, pet. denied); *In re M.S.*, 940 S.W.2d 789, 791 (Tex. App.—Austin 1997, no writ). A trial court abuses its discretion when it acts without reference to guiding rules or

4

principles. *In re C.L.*, 874 S.W.2d 880, 886 (Tex. App.—Austin 1994, no writ). In reviewing the trial court's disposition order, we must determine whether the court acted in an unreasonable or arbitrary manner. *Id.* We may not reverse the trial court's determination for abuse of discretion as long as the court acted within its discretionary authority. *Id.*

On appeal, J.G. does not contend that the trial court lacked authority to commit him to the TYC or that the trial court's order does not meet the statutory requirements. Nor does he contend the court should have placed him on probation in the custody of his mother. Rather, J.G. contends that the trial court abused its discretion by failing to place him in a boot camp because there is no evidence that it would have been an inappropriate alternative to the TYC.

We conclude that the undisputed evidence in the record supports the disposition order. J.G. was originally adjudicated delinquent for assaulting and causing bodily injury to two teachers (a third-degree felony) after having been previously referred to probation a dozen times. He was placed on probation, which he repeatedly violated by being truant from school, failing to report to his probation officer, and violating school rules on several occasions in a short period of time. He was continued on probation but almost immediately resumed violating that probation by missing school and curfew. When he was subsequently placed in a detention center prior to the modification hearing, he continued to be violent, abusive, and defiant of authority. Among other things, the evidence at the modification hearing showed that J.G. assaulted detention center officers, created a flood by plugging his toilet on more than one occasion, and was generally disruptive. In fact, it is undisputed that J.G. was written up for 75 infractions in a mere 82 days at the detention center. We further observe that there is no evidence that a placement other than the TYC was more

5

appropriate.[3] The only evidence regarding the propriety of a boot-camp placement is that J.G.'s mother desired that he be placed in boot camp; that boot camp would be more structured than placement in his mother's care; and that it was unknown whether boot camp would be a satisfactory placement for J.G. However, there is no evidence that J.G. had been or would be accepted to any boot camp or that the boot camp would ultimately serve J.G.'s needs better than the TYC.

In the commitment order, the court referred to J.G.'s twelve prior referrals to probation, the underlying adjudications for felony offenses, and J.G.'s inability to succeed in the detention-center environment, stating "[J.G.] continues to be defiant of all authority and is at a high risk to reoffend based upon (75) incident reports while [he] was detained at the [Bell County Juvenile] Detention Center." Given J.G.'s original adjudication of delinquency for serious offenses, repeated probation violations, and significant offenses at the detention center—none of which he disputes—we hold that the trial court did not abuse its discretion in modifying the previous disposition order to commit J.G. to the TYC rather than placing him in a boot camp. There is more than sufficient evidence to support the findings required under section 54.05(m) of the family code. We therefore overrule J.G.'s sole appellate issue.

## CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

---

[3] We do not hold that such evidence is required or that we would hold otherwise if there were such evidence. We note only the absence of any evidence for the court to consider in exercising its discretion.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   February 7, 2013