

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-17-00092-CV

IN THE MATTER OF J.Y.

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 323-103907-16

----------

## MEMORANDUM OPINION[1]

----------

In December 2016, J.Y., a juvenile, stipulated to and was adjudicated delinquent for aggravated robbery with a deadly weapon. *See* Tex. Penal Code Ann. § 29.03(a)(2) (West 2011). The trial court sentenced him to ten years' confinement in the Texas Juvenile Justice Department (TJJD), probated for five years. In January 2017, the State moved to modify the trial court's disposition, and in March 2017, the trial court modified its judgment and committed J.Y. to

---

[1]*See* Tex. R. App. P. 47.4.

TJJD for ten years. In one issue, J.Y. appeals the trial court's modification order, arguing that because the evidence was insufficient, the trial court abused its discretion. We affirm.

## I. Background

### A. Initial offense

In July 2016, J.Y. used a firearm to hijack an SUV from its driver. After being spotted by the police a short while later, J.Y. and an accomplice then drove at speeds approaching 100 miles per hour to try to evade capture. In November 2016, a grand jury indicted J.Y. for aggravated robbery with a deadly weapon. On December 8, 2016, J.Y. stipulated to that offense, and the trial court sentenced him to ten years' confinement in TJJD with a possible transfer to the Institutional Division of the Texas Department of Criminal Justice, probated for five years, and released J.Y. from the Tarrant County Juvenile Detention Center.[2]

### B. Present offense

On the evening of December 8—the very day he received his probation terms and was released from detention—J.Y. went riding with friends in a stolen truck. When Officer Cannon with the Arlington Police Department tried to stop the

---

[2]According to the clerk's record, J.Y. was released from detention and placed on an ankle monitor in late July 2016, only to be detained again after he was arrested for burglarizing a vehicle in October. But at the modification hearing, the State and J.Y.'s probation officer both stated that J.Y. had been detained since July 2016.

vehicle, J.Y. and his friends jumped out and ran, leaving a stolen gun on the floorboard. Officer Cannon chased J.Y. on foot and arrested him.

The State then moved to modify the trial court's disposition order, alleging that J.Y. had violated his probation conditions by fleeing from Officer Cannon,[3] by using marijuana on December 8, 2016, and by testing positive for marijuana or THC on December 10, 2016.

## C. Testimony at disposition-modification hearing

At the disposition-modification hearing on March 2, 2017, J.Y. stipulated to testimony from his mother, his probation officer, and Officer Cannon. The trial court also heard live testimony from J.Y.'s probation officer, who stated that J.Y.'s mother could not adequately supervise J.Y. at home. A placement probation officer then testified that J.Y. had been accepted to a school in Pennsylvania that could provide for his educational, drug-rehabilitation, and life-skills needs. Although this school is a non-secure facility, it provides regular supervision. The same probation officer testified that the gravity of J.Y.'s offenses would make it hard for him to be accepted into similar programs in Texas.

## D. Studies presented at disposition-modification hearing

In addition to receiving testimony, the trial court was given a social-history study prepared by J.Y.'s probation officer and a psychological evaluation conducted by a Fort Worth psychologist. The social-history study portrayed J.Y.

---

[3]*See* Tex. Penal Code Ann. § 38.04(b) (West 2016).

as a person who did not know how to control his anger, had toxic friendships, used drugs daily, and often skipped school. The psychological evaluation recommended that J.Y. should (1) be provided a "safe and structured environment," to include a residential facility if his parents could not provide such an environment; (2) be monitored using a tracking device; (3) be subjected to regular drug testing; and (4) participate in an outpatient drug-rehabilitation program, extracurricular sports, and a mentoring program.

## E. Judgment and commitment

The trial court found that J.Y. had violated the terms of his probation. After weighing the evidence, the trial court determined that the best placement for J.Y. was outside the home but not too far from family. The trial court decided against placing J.Y. at the Pennsylvania school because it is "a thousand plus miles away."

In its judgment, the trial court revoked J.Y.'s probation, found that revocation was in J.Y.'s best interest, sentenced J.Y. to TJJD for ten years with a possible transfer to the Institutional Division of the Texas Department of Criminal Justice, and found that J.Y.'s best interest would be served by committing him to TJJD. In its commitment order, the trial court found that it was in J.Y.'s best interest to be placed outside the home, that reasonable efforts were made to prevent or eliminate the need for J.Y.'s removal from the home and to make it possible for him to return home, and that in his home, J.Y. "cannot be provided the quality of care and the level of support and supervision" he needs to meet his

4

probation conditions. The trial court also found that commitment to TJJD is in J.Y.'s best interest because J.Y. needs a highly structured environment with constant supervision and control.

## II. Standard of Review

We review a trial court's decision to modify a juvenile disposition under an abuse-of-discretion standard. *See In re J.P.,* 136 S.W.3d 629, 632–33 (Tex. 2004). A juvenile court has broad discretion to determine a suitable disposition for a child who has been adjudicated as having engaged in delinquent conduct. *In re J.D.P.,* 85 S.W.3d 420, 426 (Tex. App.—Fort Worth 2002, no pet.). This is particularly true in proceedings to modify a juvenile's earlier disposition. *In re D.R.A.,* 47 S.W.3d 813, 815 (Tex. App.—Fort Worth 2001, no pet.) ("Juvenile courts are vested with a great amount of discretion in determining the suitable disposition of children found to have engaged in delinquent conduct, and this is especially so in hearings to modify disposition."). A juvenile court abuses its discretion when it acts unreasonably or arbitrarily without reference to any guiding rules or principles. *See In re C.J.H.,* 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.). In appropriate cases, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion. *Id.*

In a juvenile proceeding's disposition phase, we apply the civil standard of review to evidentiary-sufficiency challenges. *J.D.P.,* 85 S.W.3d at 426. That is, we may sustain a legal-sufficiency challenge only when (1) evidence of a vital fact is completely absent from the record, (2) legal or evidentiary rules bar the

5

court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999). Moreover, in determining whether legally sufficient evidence exists to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing a factual-sufficiency challenge under the civil standard of review, we set aside the finding at issue only if, after considering and weighing all pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

### III. Discussion

In his sole issue, J.Y. asserts that the trial court abused its discretion by committing him to TJJD because the evidence was legally and factually

6

insufficient to support the trial court's finding that reasonable efforts were made to prevent or eliminate the need for his removal from home and to make it possible to return home, although J.Y. simultaneously concedes that "reasonable efforts were made to prevent or eliminate his removal from his home." Within his sole issue J.Y's fundamental complaint appears to be that "the evidence revealed there was a [less] restrictive placement other than TJJD"; that is, he argues that the trial court abused its discretion by committing him to TJJD rather than the school in Pennsylvania.

Violating a single condition of probation is sufficient for a trial court to modify the juvenile's prior disposition. *See In re S.G.V.*, No. 04-05-00605-CV, 2006 WL 923576, at *3 (Tex. App.—San Antonio Apr. 5, 2006, no pet.) (mem. op.). When an earlier disposition was based, as here, on a finding that the juvenile engaged in a felony, the trial court may modify the disposition and commit the juvenile to TJJD if after a hearing the court finds by a preponderance of the evidence that the child violated a reasonable and lawful court order. *See* Tex. Fam. Code Ann. § 54.05(f) (West Supp. 2016). A trial court may commit a juvenile to TJJD if the court finds that (1) it is in the child's best interests to be placed outside the child's home, (2) reasonable efforts have been made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for him to return home, and (3) the child in the child's home cannot be provided the quality of care and level of support and supervision that he needs to meet the conditions of probation. *Id.* § 54.05(m)(1).

7

The evidence shows no abuse of discretion. J.Y. violated his probation terms the day he was released from detention. At the modification hearing, the trial court heard testimony from J.Y.'s probation officer about J.Y.'s home environment. This testimony was based on past but recent dealings with J.Y.'s mother,[4] from which the probation officer expressed "grave concern" that the mother could not supervise J.Y. The State offered additional testimony from this probation officer, who stated that J.Y.'s mother allowed him to associate with the friends who had helped get him into his current situation and that she is J.Y.'s primary caretaker because the father does not live with the family. A recommendation from the psychological evaluation added that J.Y. needed a "safe and structured environment."

Particularly in light of J.Y.'s concession as earlier noted, we conclude that the evidence was legally and factually sufficient to support the trial court's finding that reasonable efforts were in fact made to prevent or eliminate the need for his removal from home and to make it possible to return home.

J.Y.'s argument that the trial court abused its discretion by committing him to TJJD as opposed to the school in Pennsylvania is similarly unavailing. In his brief, J.Y. concedes that the trial court made the statutorily required findings in its disposition order but claims that the evidentiary weight indicates that the trial court's placement of J.Y. was manifestly unjust because TJJD was not the least

---

[4]One of J.Y.'s brothers was already on juvenile probation and had been assigned the same probation officer.

8

restrictive placement for him. In a modification hearing, however, a trial court need not consider alternative dispositions. *In re A.S.*, No. 05-13-01022-CV, 2013 WL 6405489, at *4 (Tex. App.—Dallas Dec. 5, 2013, no pet.) (mem. op.) (citing *In re A.T.M.*, 281 S.W.3d 67, 72 (Tex. App.—El Paso 2008, no pet.)); *In re P.W.*, No. 03-04-00562-CV, 2005 WL 2043944, at *3 (Tex. App.—Austin Aug. 25, 2005, no pet.) (mem. op.); *see* Tex. Fam. Code Ann. § 54.05(f). If sufficient evidence supports the trial court's findings and if the order comports with the family code, the trial court does not abuse its discretion. *See A.T.M.*, 281 S.W.3d at 72*. Here, the trial court's statutorily required findings regarding J.Y.'s commitment to TJJD were supported by sufficient evidence, and the order aligns with the family-code guidelines. We thus conclude that the trial court did not abuse its discretion by committing J.Y. to TJJD rather than placing him in the Pennsylvania school. *See, e.g., In re C.C.B.*, No. 2-08-379-CV, 2009 WL 2972912, at *3–4 (Tex. App.—Fort Worth Sept. 17, 2009, no pet.) (mem. op.) (holding that evidence of lack of structure, support, and supervision at home supported trial court's decision to commit juvenile to Texas Youth Commission rather than placing him in alternative treatment program); *In re D.W.*, No. 2-08-243-CV, 2009 WL 1815779, at *2 (Tex. App.—Fort Worth June 25, 2009, no pet.) (mem. op.) (holding that evidence of improper supervision and juvenile's need for structure supported trial court's action in committing juvenile to Texas Youth Commission rather than residential program for juvenile sex offenders).

We overrule J.Y.'s only issue.

## IV. Conclusion

Having overruled J.Y.'s sole issue, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
ELIZABETH KERR
JUSTICE

PANEL: MEIER, GABRIEL, and KERR, JJ.

DELIVERED: August 3, 2017