**AFFIRMED and Opinion Filed November 9, 2022**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-01054-CV**

**IN THE MATTER OF E.M.H., A JUVENILE**

**On Appeal from the County Court at Law No. 1**
**Hunt County, Texas**
**Trial Court Cause No. J-02589**

## MEMORANDUM OPINION
Before Justices Nowell, Carlyle, [1] and Smith
Opinion by Justice Smith

Appellant E.M.H. appeals the juvenile court's disposition order committing him to the care, custody, and control of the Texas Juvenile Justice Department (TJJD). In one issue, E.M.H. contends that the trial court acted arbitrarily and unreasonably by committing him to TJJD instead of continuing his probation and requiring him to wear an electronic monitor. Because we conclude that the juvenile court had sufficient information before it to commit E.M.H. to TJJD and, therefore, did not abuse its discretion, we affirm.

---

[1] The Honorable Leslie Osborne participated in the submission of this case; however, she did not participate in issuance of this memorandum opinion due to her resignation on October 24, 2022. The Honorable Cory Carlyle has substituted for Justice Osborne in this cause. *See* TEX. R. APP. P. 41.1(b)(1). Justice Carlyle has reviewed the briefs and the record before the Court.

## Background

The State alleged, in its original adjudication petition, that E.M.H. engaged in delinquent conduct by committing aggravated assault with a deadly weapon on January 17, 2020. *See* TEX. FAM. CODE ANN. § 51.03(a)(1) (delinquent conduct includes conduct that violates a penal law and is punishable by imprisonment or by confinement in jail); TEX. PENAL CODE ANN. § 22.02(a)(2) (aggravated assault with a deadly weapon). Specifically, the State alleged that E.M.H. intentionally or knowingly threatened his grandmother with imminent bodily injury and used or exhibited a Daisy Model 426 $CO_2$ Pistol during the commission of the assault. E.M.H. was twelve years old at the time of the offense.

E.M.H. pleaded true to the allegations and was adjudicated delinquent on May 21, 2020. Pursuant to the parties' agreement, the trial court placed E.M.H. on probation for one year and further placed him in the custody of Lake Granbury Youth Services to successfully complete its post-adjudication program. Less than two months later, E.M.H. was unsuccessfully discharged from the program at Lake Granbury Youth Services for being defiant and confrontational. E.M.H. was subsequently placed in Boot Camp with the Grayson County Department of Juvenile Services, which he also failed to complete.

On May 19, 2021, the State moved to modify E.M.H.'s disposition. The State alleged that E.M.H. had violated his conditions of probation on numerous occasions, including committing new offenses, using marijuana, breaking curfew, and failing

to complete the ordered programs. The State sought for E.M.H.'s probation to be revoked and for him to be committed to TJJD. However, instead of moving forward with TJJD commitment, the parties agreed to a modification of E.M.H.'s disposition. On September 3, 2021, E.M.H. pleaded true to three of the State's allegations in its motion to modify: (1) he failed to successfully complete the Lake Granbury Youth Services Program; (2) he failed to successfully complete the Grayson County Department of Juvenile Services Program; and (3) he committed robbery on April 29, 2021, in Dallas County. The juvenile court placed E.M.H. in the custody of the John R. Roach Juvenile Detention Center Summit Post Adjudication Program, ordered E.M.H. to successfully complete the program, and extended E.M.H.'s probation until March 23, 2023. E.M.H. was unsuccessfully discharged from the program on October 21, 2021, due to his continued disruptive and combative behavior.

The State again moved to modify E.M.H.'s disposition, revoke probation, and commit E.M.H. to TJJD. On November 12, 2021, E.M.H. pleaded true to failing to successfully complete the John R. Roach Juvenile Detention Center Summit Post Adjudication Program. The juvenile court found that E.M.H. violated his conditions of probation by failing to complete the program and ordered him committed to TJJD for an indeterminate period of time not to exceed his nineteenth birthday. This appeal followed.

**Committing a Juvenile to TJJD**

A juvenile court has broad discretion to determine whether to modify the disposition of a child who has been adjudicated delinquent. *In re T.P.*, 251 S.W.3d 212, 214 (Tex. App.—Dallas 2008, no pet.). A trial court abuses its discretion when it acts unreasonably or arbitrarily or without reference to guiding rules and principles. *In re D.R.*, 193 S.W.3d 924, 924 (Tex. App.—Dallas 2006, no pet.). Legal and factual insufficiency are relevant factors in assessing whether the trial court abused its discretion in making the necessary findings for commitment. *In re C.G.*, 162 S.W.3d 448, 452 (Tex. App.—Dallas 2005, no pet.). To modify a juvenile delinquent's disposition to commitment to TJJD, the trial court must find that: (1) the original disposition was for conduct constituting a felony; (2) the child violated a reasonable and lawful order of the court since original disposition; (3) it is in the child's best interest to be placed outside his home; (4) reasonable efforts were made to prevent or eliminate the need for the child's removal from his home and to make it possible for the child to return home; and (5) the child, in his home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. FAM. §§ 54.05(f), (m)(1).

The evidence at the disposition hearing showed E.M.H. had been on probation for about two years, some of which was for a prior adjudication. He had been involved with the Hunt County Juvenile Probation Department since he was ten years old; he was fourteen at the time of the final disposition hearing. E.M.H. failed

to complete any of his three placement programs while on probation. When he was not in a placement program, he mostly lived with his mother. He stole from the family and took his mother's and sister's cars without permission. Although his mother tried to supervise E.M.H., he was very disrespectful toward her, violated curfew, and sometimes ran away. His mother also tried to get him help at Elevate Healthcare, an outreach program for juveniles in Mesquite, but E.M.H. quit going after one week.

E.M.H.'s attorney questioned E.M.H.'s probation officer extensively about whether E.M.H. received sufficient counseling and whether his medications were proper and helping him. E.M.H.'s attorney also pointed out through testimony that E.M.H. had been on probation through Covid-19 and, thus, his services had been limited to some extent because he had been required to communicate with his family, counselor, and probation officer through phone calls or Zoom instead of in person.

E.M.H. testified and denied assaulting his grandmother and committing robbery, although he had previously pleaded true to both allegations. He called his grandmother a liar. The State asked him whether he pulled a knife on his brother, and he responded, "Yes," and explained, "I do that every time when we about to fight, because, like, he's taller."

E.M.H. explained that he got in trouble at his placements because older boys picked on him, so he stood up for himself and would get in fights. He claimed that staff did not treat him well and shoved and pushed him at boot camp. The incident

reports admitted into evidence paint a much different picture. They show that E.M.H. was disrespectful to staff, threatened staff, physically assaulted staff, used derogatory language, yelled at others, refused to comply with directives, was hostile and aggressive, threatened suicide, and at his last placement, flooded his cell.

E.M.H. also reasoned that he did not do what he was supposed to while on probation because he thought it was a game. Once he realized he might be sent to TJJD, he realized it was not a game and "not time to play." He testified that he was placed on an electronic monitor after being discharged from his most recent placement and that "[i]t was the best time of [his] life" because he really got to talk to his mother and spend time with her. He was temporarily placed on the monitor and on house arrest for about a week while the probation department sought a bed for his detention and awaited the final disposition hearing. His mother testified that the electronic monitor worked well and requested he be returned to her care.

At the close of the disposition hearing, the juvenile court made the necessary findings to support commitment. *See* FAM. §§ 54.05(f), (m)(1). The juvenile court also commented that E.M.H. had failed three placements, been adjudicated of another offense in another county, and failed numerous conditions of probation. The court explained, "We're just out of options. We don't have any more resources for you."

E.M.H. argues there was no evidence that TJJD would provide the services that he needed or that there were no other available resources in the community to

–6–

assist him. He asserts that the trial court should have placed him on probation in his home, with an electronic monitor, as that would have been the least restrictive option while providing a reasonably appropriate amount of community supervision.

We disagree. E.M.H.'s probation officer testified that the department was out of options and that they had tried everything. The department offered him multiple post-adjudication programs and services, which he failed to complete. E.M.H.'s own testimony revealed that he thought it was a game and did not take it seriously despite the fact that the juvenile court warned him at his September 2021 modification hearing that, if he failed to complete the third placement program, the court would have no choice but to send him to TJJD. We reject E.M.H.'s argument that "[t]here was no meaningful exploration in to any community based alternatives."

We also reject E.M.H.'s argument that a home placement, with an electronic monitor, was warranted under this record. Based on E.M.H.'s previous behavior at home and at the various placements, we cannot conclude that the juvenile court abused its discretion by denying appellant's request to be released to his mother under electronic monitoring and, instead, committing him to TJJD as the probation department recommended. A juvenile court is not required to give "third and fourth chances to a juvenile who has abused a second one." *In re J.P.*, 136 S.W.3d 629, 633 (Tex. 2004). We overrule E.M.H.'s sole issue.

## Conclusion

We affirm the juvenile court's order modifying E.M.H.'s disposition and committing him to the care, custody, and control of TJJD.

/Craig Smith/

CRAIG SMITH
JUSTICE

211054F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

IN THE MATTER OF E.M.H., A JUVENILE

No. 05-21-01054-CV

On Appeal from the County Court at Law No. 1, Hunt County, Texas
Trial Court Cause No. J-02589.
Opinion delivered by Justice Smith. Justices Nowell and Carlyle participating.

In accordance with this Court's opinion of this date, the November 12, 2021 order of the juvenile court modifying E.M.H.'s disposition and committing him to the care, custody, and control of the Texas Juvenile Justice Department is **AFFIRMED**.

Judgment entered this 9th day of November 2022.