

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-24-00561-CV

**IN THE MATTER OF A.J.P.**

From the 386th Judicial District Court, Bexar County, Texas
Trial Court No. 2024JUV00245
Honorable Jacqueline Herr-Valdez, Judge Presiding

Opinion by:    Velia J. Meza, Justice

Sitting:        Irene Rios, Justice
               H. Todd McCray, Justice
               Velia J. Meza, Justice

Delivered and Filed: June 11, 2025

AFFIRMED

Appellant, A.J.P., challenges the sufficiency of the evidence supporting an order committing her to the custody of the Texas Juvenile Justice Department (TJJD). A jury found A.J.P. engaged in delinquent conduct by committing aggravated assault with a deadly weapon. The juvenile court signed an order of adjudication consistent with the jury's verdict. The court then signed an order of disposition committing A.J.P. to the custody of TJJD for a determinate period of fifteen years with a possible transfer to the Texas Department of Criminal Justice. The court found placement outside the home was appropriate (1) due to the serious nature of the offense and the injuries to the victim, (2) due to the use of a weapon in commission of the offense, and (3) because the child is a danger to herself or others. We affirm.

## BACKGROUND

A.J.P. was arrested at fifteen-years old on allegations of aggravated robbery and aggravated assault with a deadly weapon arising from two separate incidents.[1]

In the early morning of December 19, 2023, A.J.P. messaged another fifteen-year-old, J.H., on Instagram, planning to fight in a Denny's parking lot. A.J.P. arrived in a stolen car with an entourage of unidentified friends and J.H. showed up with a friend named C.S.

Exiting her vehicle in a black ski mask, A.J.P. robbed J.H. and C.S. at gunpoint, telling them to "run it."[2] J.H. and C.S. refused to comply. A.J.P. then began firing in their direction, causing both girls to run for cover. While running, J.H. was struck from behind by a bullet. The bullet traveled through J.H.'s intestines and genitals, causing significant, permanent injury. A.J.P. jumped back in the car and fled.

The emergency medical technician who responded to the scene testified that J.H.'s injuries, both their extent and location, put her at "a high risk for mortality." J.H. was given a blood transfusion en route to the hospital. J.H. spent a month recovering, required a dozen surgeries, and coded three times. During her hospital stay, J.H. received an Instagram message from A.J.P. containing a video recording of the shooting.

The jury found beyond a reasonable doubt that A.J.P. engaged in delinquent conduct by committing aggravated assault with a deadly weapon. A.J.P. elected to have her disposition decided by the judge. Following adjudication based on the jury's findings, the judge ordered A.J.P. committed to TJJD for a determinate period of 15 years.

---

[1] During the trial, the State abandoned the aggravated assault charge arising from the second incident due to the erroneous inclusion of a "reckless" mental state in its petition. The crime charged required that it be committed "knowingly" and "intentionally."

[2] According to C.S., "run it" means "give me all you have."

**ANALYSIS**

In a single issue, A.J.P. argues the evidence is legally and factually insufficient to support the disposition findings required by section 54.04(i)(1) of the Texas Family Code. A.J.P. does not challenge the adjudication of delinquent conduct.

## 1    Standard of Review and Applicable Law

A juvenile court has considerable discretion to determine a suitable disposition for a child adjudicated as having engaged in delinquent behavior. *In re E.K.G.*, 487 S.W.3d 670, 673 (Tex. App.—San Antonio 2016, no pet.). "Absent an abuse of discretion, a reviewing court will not disturb the juvenile court's disposition." *Id*.

While fact findings supporting an *adjudication* of delinquency must be supported by proof beyond a reasonable doubt, the Juvenile Justice Code provides no such requirement for a trial court's *disposition* order.[3] However, "if an initial disposition order places a child in [TJJD] . . . [the order] must expressly state that (1) removal from the home is in the child's best interests, (2) reasonable efforts were made to avoid removal, and (3) care and supervision the child needs to meet the conditions of probation cannot be provided at home." *In re J.P.*, 136 S.W.3d 629, 630 (Tex. 2004) (citing TEX. FAM. CODE § 54.04(i)(1)).

Under the abuse of discretion standard, we evaluate whether these fact findings are supported by legally and factually sufficient evidence. For legal sufficiency review, we consider evidence favorable to the finding if a reasonable fact finder could and disregard evidence contrary to the finding unless a reasonable fact finder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 827 (Tex. 2005). Anything more than a scintilla of evidence supporting each necessary

---

[3] *Compare* TEX. FAM. CODE § 54.03(f) (establishing burden of proof for adjudication) *with id*. § 54.04 (laying out standards applicable to disposition without establishing a burden of proof) *and id*. § 51.17(a) (providing the Texas Rules of Civil Procedure apply to juvenile proceedings unless stated otherwise).

finding renders the order legally sufficient. *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex. 1996). For factual sufficiency review, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to the finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

## 2    Application

Here, the trial court made the required statutory findings when it found that (1) it is in the child's best interest to be placed outside the child's home, (2) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home, and (3) the child's home cannot provide the quality of care and level of support and supervision the child needs to meet the conditions of probation. These findings were pronounced orally at the disposition hearing and in writing in the disposition order.

The court heard evidence regarding A.J.P.'s propensity for violence and criminal conduct. While in detention pending trial, A.J.P. engaged in violent behavior "at least two dozen" times with staff and needed to be restrained on multiple occasions. In September 2023, A.J.P. started a fight with another student at Clark High School. A.J.P. needed to be physically restrained to stop her from continuing to strike the other student. A.J.P. told the school security officer the fight began because the other student pulled her hair. However, when the security officer reviewed video surveillance, he determined that A.J.P. initiated the fight by "running full speed toward [the student], grabbing her by the hair, pulling her down to the floor and continuously striking her."

The predisposition report, admitted during the disposition hearing, indicated A.J.P. had a significant disciplinary history in school, including suspensions for possessing a controlled substance, assaulting another student, and excessive unexcused absences. Additionally, the report

indicated that A.J.P. shot another person on February 15, 2024, involving a similar type of conduct as in the December 2023 shooting for which she was adjudicated.

As to the conditions of A.J.P.'s home, the report stated that A.J.P. lives with her mother who is unemployed, without a permanent residence, and has a long criminal history, including forgery, fraud, and possession of controlled substances. A.J.P. reported that, due to her sexual orientation and relationships with other girls, she fought with her mother, and that A.J.P.'s father was absent. A.J.P. frequently ran away from home for periods of up to a week at a time. Finally, A.J.P. successfully completed a GPS monitor program.[4] Ultimately, the Bexar County Juvenile Staffing Committee recommended residential placement, due to A.J.P. "not having any prior services."

In summary, the evidence showed that A.J.P. (1) shot two people, one of whom nearly died, (2) had a history of violent conduct in school settings, (3) failed to attend school and frequently ran away, (4) continued to engage in violent conduct with juvenile detention staff while the case was pending, (5) had complex behavioral needs, and (6) had an unstable and unsupportive home environment.

"[I]t is not necessary for a juvenile court to exhaust all possible alternatives before committing a juvenile to the TJJD." *E.K.G.*, 487 S.W.3d at 678. And in juvenile justice, "the best interests of children who engage in serious and repeated delinquent conduct are superseded to the extent they conflict with public safety." *J.P.*, 136 S.W.3d at 633; *see also* TEX. FAM. CODE § 51.01 (laying out public policy of Juvenile Justice Code and stating that a child should only be removed from their parents "when necessary for the child's welfare or in the interest of public safety). Based

---

[4] Neither the predisposition report nor the probation officer's testimony explained the purpose or terms of this GPS monitor program—only that A.J.P. complied with the program and yet continued to use marijuana after the program ended.

on the evidence presented, we hold the evidence is legally and factually sufficient to support the juvenile court's findings under section 54.04(i)(1). *See E.K.G.*, 487 S.W.3d at 678–79 (holding disregard for authority, repeated assaultive behavior, and inadequate supervision and structure in the home supported commitment to TJJD).

## CONCLUSION

Because the evidence was legally and factually sufficient to support the required statutory findings, we cannot conclude the trial court abused its discretion in determining that the proper disposition for A.J.P. was to be sent to TJJD. *E.K.G.*, 487 S.W.3d at 678–79; *City of Keller,* 168 S.W.3d at 826–27. We affirm the court's disposition order.

Velia J. Meza, Justice