**Affirmed and Opinion filed August 29, 2024.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-22-00894-CV**
**NO. 14-22-00895-CV**

---

## IN THE MATTER OF J.H.

---

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 2021-01349J, 2022-01308J**

---

## OPINION

In this juvenile delinquency appeal, J.H. appeals from the juvenile court's two disposition judgments and orders of commitment to the Texas Juvenile Justice Department (TJJD) for determinate and indeterminate sentences. Appellant contends that the juvenile court abused its discretion by (1) committing him to the TJJD when no evidence supports the juvenile courts findings; (2) committing him to the TJJD in light of his diabetic condition; and (3) excluding evidence of a report about the TJJD. We affirm.

# I. PROCEDURAL BACKGROUND

In Case No. 14-22-00894-CV (District Court Cause No. 2021-01349J), the State filed a petition alleging that J.H. engaged in delinquent conduct on July 31, 2021, by committing aggravated robbery with a firearm when J.H. was fifteen years old. Appellant stipulated to the offense. The juvenile court found that J.H. engaged in delinquent conduct and entered a disposition of "10 years TJJD probated to 5 years CJPO" with a condition of probation that J.H. not violate any laws.

Soon thereafter, appellant was placed with the Harris County Juvenile Probation Department at the Harris County Leadership "Quest" facility. He was released to his mother's custody on June 14, 2022.

In Case No. 14-22-00895-CV (District Court Cause No. 2022-01308J), the State filed a petition alleging that J.H. engaged in delinquent conduct on August 2, 2022, by committing aggravated robbery with a firearm. In Case No. 14-22-00894-CV, the State filed an amended petition to modify the disposition, contending that J.H. violated probation based on this second aggravated robbery.

J.H. pleaded true to the second offense and to the violation of his probation. The court adjudicated J.H. as engaging in delinquent conduct and held a disposition hearing before the court. The State offered, and the juvenile court admitted, J.H.'s stipulation of evidence for the second offense and a probation report. The State called no witnesses. J.H. called his mother to testify as well as an employee from Change Happens, a nonprofit that works with children in the juvenile justice system. The juvenile court sustained the State's relevancy objection to appellant's proffered exhibit R-3, a 108-page report about the TJJD by the Texas Sunset Advisory Commission.

The court entered a disposition in Case No. 14-22-00894-CV of a determinate sentence of four years in the TJJD and in Case No. 14-22-00895-CV of an indeterminate sentence in the TJJD. In each case, the court included written findings in its orders. Among other things, the court found that (1) J.H.'s best interest will be served by committing him to the care, custody, and control to the TJJD; and (2) J.H., in his home, cannot be provided the quality of care and level of support and supervision that J.H. needs to meet the conditions of probation. In Case No. 14-22-00895-CV, the court also found that J.H. needs a highly structured environment with the level of supervision and control that cannot be met by the resources available within the community.

## II.   COMMITMENT TO TJJD

J.H.'s first issue is: "Whether the juvenile court committed reversible error when it abused its discretion by committing Appellant to the Texas Juvenile Justice Department on a four (4) year determinate sentence when there was no evidence presented during the contested disposition hearing to support the trial judge's special finding that Appellant needs a highly structured environment with a level of supervision and control that cannot be met by resources available within the community."

J.H.'s second issue is: "Whether the juvenile court erred by abusing its discretion in sentencing Appellant to TJJD given his undisputed serious diabetic condition, and the danger of a placement to TJJD to Appellant's health."

J.H. argues these issues together, so we address them together. Within his argument of these issues, J.H. contends further that the evidence is insufficient to

3

support the juvenile court's findings "with respect to meeting the needs of the Appellant and the best interest of the Appellant."[1]

## A.    Legal Principles and Standard of Review

When a court commits a child to the TJJD, the court must include in its order the following findings, among others: (1) "the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation"; and (2) "it is in the child's best interests to be placed outside the child's home."  Tex. Fam. Code § 54.04(i)(1) (original disposition); Tex. Fam. Code § 54.05(m)(1) (modification of disposition) *see also In re J.P.*, 136 S.W.3d 629, 631 (Tex. 2004) (noting that "the plain language of the Family Code requires written findings regarding best interests . . . and quality of in-home care in an original disposition order" (emphasis omitted)). The court must "state specifically in the order its reasons for the disposition."  Tex. Fam. Code § 54.04(f) (original disposition); Tex. Fam. Code. § 54.05(i) (modification of disposition).

From the parties' briefs and our research, it does not appear this court has issued a precedential opinion articulating the standards for reviewing a juvenile court's disposition order under Section 54.04 of the Family Code.[2]  Other courts of

---

[1] J.H. contends that the evidence is both legally and factually insufficient to support these two findings, but he presents the standards only for legal sufficiency, and he does not address how the evidence would be factually insufficient under that standard.  Under these circumstances, any argument regarding factual insufficiency is waived. *See, e.g.*, *Jallan v. PNA Invs., LLC*, No. 14-21-00460-CV, 2023 WL 5316877, at *8 (Tex. App.—Houston [14th Dist.] Aug. 18, 2023, no pet.) (mem. op.); *Duke Realty L.P. v. Harris Cnty. Appraisal Dist.*, No. 14-15-00543-CV, 2016 WL 3574666, at *2 (Tex. App.—Houston [14th Dist.] June 30, 2016, no pet.) (mem. op.).

[2] This court has applied standards similar to the ones we adopt today in non-precedential cases. *See In re D.W.A.*, 14-00-01327-CV, 2001 WL 1590166, at *1 (Tex. App.—Houston [14th Dist.] Dec. 13, 2001, no pet.) (not designated for publication); *In re M.R.L.*, No. 14-00-00797-CV, 2001 WL 1249302, at *2 (Tex. App.—Houston [14th Dist.] Oct. 18, 2001, no pet.) (not

appeals generally review the juvenile court's disposition order for an abuse of discretion, observing that "the legal and factual sufficiency of the evidence are relevant in evaluating whether the juvenile court abused its discretion." *See, e.g.*, *In re K.H.*, 682 S.W.3d 567, 575 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). The inquiry is sometimes phrased as a two-prong analysis: "(1) did the trial court have sufficient information upon which to exercise its discretion, and (2) did the trial court err in its application of discretion?" *In re C.C.*, No. 02-17-00216-CV, 2018 WL 1865804, at *3 (Tex. App.—Fort Worth Apr. 19, 2018, no pet.) (mem. op.).

This court has applied similar standards in a case involving the modification of a juvenile court's disposition order based on a violation of probation. *See In re R.L.R. III*, No. 14-06-00926-CV, 2008 WL 323758, at *2 (Tex. App.—Houston [14th Dist.] Feb. 7, 2008, no pet.) (mem. op.) (reviewing the modification for an abuse of discretion after deciding whether the evidence is sufficient to support the trial court's finding that the juvenile violated a condition of probation). And this court engages in a similar inquiry when reviewing a juvenile court's waiver of jurisdiction and transfer to criminal court. *See In re C.M.M.*, 503 S.W.3d 692, 701 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (first reviewing the juvenile court's specific findings under a traditional sufficiency of the evidence standard and then reviewing the ultimate waiver decision for an abuse of discretion).

Accordingly, in an appeal from a disposition order under Section 54.04 of the Family Code, we will first review any challenged findings for sufficient evidence and then review the disposition decision for an abuse of discretion. This standard is faithful to the requirement that juvenile courts make certain statutory

designated for publication); *T.W. v. State*, No. 14-99-00564-CV, 2001 WL 1098186, at *2–3 (Tex. App.—Houston [14th Dist.] Sept. 20, 2001, no pet.) (not designated for publication).

findings while also acknowledging the courts' broad discretion in assessing an appropriate disposition. *Compare In re J.P.*, 136 S.W.3d at 631 (requirement of statutory findings), *with In re K.H.*, 682 S.W.3d at 575 ("A juvenile court has broad discretion to determine a suitable disposition for a juvenile who has been adjudicated as having engaged in delinquent behavior.").

When a trial court's finding is challenged for legal sufficiency, we review the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *Castillo v. Luna*, 640 S.W.3d 256, 260 (Tex. App.—Houston [14th Dist.] 2021, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* The factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id.* "The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the finding under review." *Id.*[3]

A juvenile court abuses its discretion if it acts without reference to guiding rules or principles or its decision is essentially arbitrary, given the evidence upon

---

[3] J.H. cites in his brief only the "no evidence" standard for assessing the sufficiency of the evidence for a juvenile court's findings in its disposition order. This standard is used in civil cases when the burden of proof is a preponderance of the evidence. *See, e.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). The Constitution requires that the criminal standard of proof—beyond a reasonable doubt—applies to adjudicate a juvenile as delinquent. *See In re Winship*, 397 U.S. 358, 368 (1970). The civil standard—preponderance of the evidence—applies in a proceeding to modify a disposition. *See* Tex. Fam. Code § 54.05(j). There is a split of authority regarding the burden of proof and concomitant sufficiency standard to apply for findings in support of an original disposition order. *See In re T.K.E.*, 5 S.W.3d 782, 785 (Tex. App.—San Antonio 1999, no pet.). Because J.H. refers this court only to the civil standard, that standard is the one we apply today without further critical analysis of the proper standard to apply in future cases. *But see In re M.A.F.*, No. 14-03-00698-CV, 2004 WL 1661009, at *1 (Tex. App.—Houston [14th Dist.] July 27, 2004, no pet.) (mem. op.) (uncritically applying criminal sufficiency standard to both adjudication and disposition findings).

which it is based. *See in re C.M.M.*, 503 S.W.3d at 701; *see also In re K.H.*, 682 S.W.3d at 575.

**B.    Evidence**

Through J.H.'s stipulation and the probation report, the juvenile court heard evidence that appellant committed an aggravated robbery with a deadly weapon—a firearm—when he was fifteen years old in 2021. The court placed him on probation. J.H. attended the Harris County Leadership Academy Quest program, where he received drug counseling for his usage of marijuana, individual therapy, and group therapy. He was released to his mother's custody on June 14, 2022. He was accepted to "Exceptional Wellness" for individual therapy and counseling sessions, and he was accepted to the "Change Happens – Youth C.A.N." program to assist with acquiring his GED. He obtained a job at a Whataburger restaurant.

J.H. was placed on an ankle monitor, for which he was "moderately compliant." There were several low-battery notifications and some "late night returns or no return notifications." He had been compliant with other probation requirements.

But, less than two months after being released to his mother's custody, on August 2, 2022, he again committed an aggravated robbery with a deadly weapon—a firearm. Although the firearm was later determined to be a pellet gun, the complainant thought it was real. J.H.'s co-respondent held the gun to the complainant's face and struck her in the head with it. J.H. grabbed the complainant's arm. They demanded her car keys and took her cellphone. J.H. admitted they were trying to steal the complainant's car. A drug screen performed the following day showed J.H. was positive for THC.

7

According to a psychological screening conducted in October 2021, J.H. has had a history of "some truancy, school suspensions, substance abuse, and gang affiliation." The probation report indicates that J.H. denied current affiliation with gang members but that J.H. gets into fights with peers at times. The screening indicated, "He has demonstrated little regard for his own safety as well as the safety of others in the community and placement may provide a safe and stable environment for him to come to understand about the consequences of his behavior." J.H.'s performance on an achievement test indicated that he had "very good abilities in all areas tested and is quite capable of achieving any goals he may set for himself."

J.H.'s parents were in the process of divorcing and lived separately; there was a "tremendous amount of animosity" between the parents. J.H. said his parents say things about each other and make him feel like he has to choose sides. He lived primarily with his mother, who had strict house rules that he reported following "most of the time (80%)."

According to the probation report, J.H.'s mother had said previously that she "had no control over him." On the day of the most recent aggravated robbery, she had "begged her son to stay home and not leave the home." There was a prior history with the Department of Family and Protective Services, including one case for neglectful supervision and another for physical abuse. But the cases were closed within a matter of days or weeks.

A "PACT pre-screen response report" completed on August 23, 2022, indicated that J.H. has a "high" overall risk to reoffend. In addition to the two aggravated robberies charged in these cases, J.H. had a prior delinquency or criminal history with the following offenses and dispositions:

| Date | Offense | Disposition |
|---|---|---|
| 05/16/2019 | Aggravated assault with a deadly weapon | Deferred adjudication, probation ended 02/21/2020, nonsuited |
| 05/14/2020 | Criminal mischief, $2,500 to $30,000 property damage | Deferred adjudication, probation ended 04/08/2021, nonsuited |
| 07/05/2020 | Assault of a family member | FIRST deferred prosecution; DA declined to indict |
| 07/05/2020 | Resisting arrest | Charge rejected |
| 08/02/2021 | Evading arrest or detention, vehicle used | Court supervision |
| 08/23/2021 | Theft of a firearm | Charge rejected |

J.H.'s mother testified that shortly before the disposition hearing, J.H. had been hospitalized and diagnosed with diabetes with a "stroke" or "heart attack" blood-sugar level. He would require insulin to treat his diabetes. She did not think J.H. would get the proper medical treatment he would need outside of her home.

She testified that if J.H. were returned to her custody, she would ensure that J.H. does not hang out with his co-respondents from the aggravated robbery. When asked what would be different if J.H. were returned to her custody, she testified, "Maybe he can be on the monitor." But she acknowledged that J.H. had already been on an ankle monitor when he was released to her custody before committing the second aggravated robbery. She testified that she had never had any problems with him at home.

An employee for Change Happens, a nonprofit organization, testified that J.H. was referred to their organization through juvenile probation. The employee described the possible services that could be provided to J.H. and the family to help keep him out of trouble, including vocational training. But J.H. hadn't started

9

any of those services because the organization had engaged the family only a few days or weeks before J.H. was arrested for the second aggravated robbery.

## C.  Legally Sufficient Evidence

We now consider the sufficiency of this evidence in support of the juvenile court's findings that (1) J.H. needs a highly structured environment with a level of supervision and control that cannot be met by resources available within the community; (2) J.H., in his home, cannot be provided the quality of care and level of support and supervision that J.H. needs to meet the conditions of probation; and (3) J.H.'s best interest will be served by committing him to the care, custody, and control to the TJJD.  We address the first two findings together.

### 1.  J.H.'s Needs

J.H. has repeatedly engaged in criminal conduct while living at home.  In addition to the aggravated robberies that gave rise to the instant dispositions, J.H. had thrice before been placed on deferred adjudication or prosecution, including one for aggravated assault and another for assault of a family member.  Following his release from a residential facility, J.H. was placed at home less than two months before he committed the second aggravated robbery using a firearm.  Although he received drug counseling while on probation, he continued to test positive for THC.  These facts alone could support the juvenile court's first two findings recited above.  *See In re K.E.*, 316 S.W.3d 776, 780–81 (Tex. App.—Dallas 2010, no pet.) (sufficient evidence to support finding that the child could not be provided a quality of care and level of support and supervision at home based on evidence that he was charged with two felony drug offenses and associated with members of a gang known for drug sales and violent activity, which occurred over a two-year period).

J.H. received counseling and other services through the Quest program, and he began to engage with services within the community, according to his own witness, yet he nonetheless committed another aggravated robbery with a firearm. Additional evidence supporting the juvenile court's first two findings include the turbulent divorce between his parents—during which the parents placed J.H. in the middle—and his mother's statement that she could not control him. Despite her attempt to keep him at home on the night of the most recent robbery, he did not listen to her. By his own admission, J.H. disregarded his mother's rules 20% of the time while at home. The quality and quantity of evidence supporting the juvenile court's findings about J.H.'s needs are far greater than in a case overturning a juvenile court's finding. *See In re A.S.*, 954 S.W.2d 855, 863 (Tex. App.—El Paso 1997, no pet.) (reversing disposition based on factually insufficient evidence of the "needs" finding; "Other than A.S.'s commission of this state jail felony [for burglary] and the violation of his mother's curfew on this occasion, there is no evidence to establish that [his mother] cannot provide the quality of care and level of support and supervision that A.S. needs to meet the conditions of probation.").

We conclude that reasonable and fair-minded people could reach the first two findings recited above, i.e., the "needs" findings, in support of the juvenile court's disposition.

### 2. *J.H.'s Best Interest*

The juvenile court's best interest finding is supported by the evidence of J.H.'s repeated violent conduct, drug use, prior gang associations, and his history of problems in school and getting into fights. *See In re W.J.P.*, No. 01-19-00988-CV, 2021 WL 2931437, at *5–6 (Tex. App.—Houston [1st Dist.] July 13, 2021, no pet.) (best interest finding support by evidence of the child's escalating violent conduct, criminal conduct, problems at school, drug use, and history of disobeying

and assaulting mother); *In re M.A.F.*, No. 14-03-00698-CV, 2004 WL 1661009, at *1 (Tex. App.—Houston [14th Dist.] July 27, 2004, no pet.) (mem. op.) (best interest finding supported by evidence of delinquent conduct offenses, theft, curfew violations, probation violations, criminal trespass, history of aggressive behavior, suspected drug use, prior affiliation with a gang, and history of behavior problems); *In re M.A.C.*, 999 S.W.2d 442, 444, 447–48 (Tex. App.—El Paso 1999, no pet.) (best interest finding supported by evidence that the child agreed to transport nearly 100 pounds of marijuana across the border and there was conflicting evidence about the level of control the parents could exert over the child). Appellant points to no evidence that his diabetes condition would be better managed at home than in the TJJD.

The quality and quantity of evidence supporting the juvenile court's finding that J.H.'s best interest will be served by committing him to the TJJD are far greater than in cases that have overturned the juvenile courts' findings. *See In re A.S.*, 954 S.W.2d at 863 (insufficient evidence to support best interest finding when there was no evidence the child had committed any other crimes, he severed ties to a gang, he obeyed his mother's instructions, and he acted responsibly within the family structure); *see also Hill v. State*, 454 S.W.2d 429, 430–31 (Tex. App.—San Antonio 1970, no writ) (error to commit eleven-year-old child to Texas Youth Council after adjudication for a burglary when there was no evidence he had ever been in trouble before or that his home conditions were detrimental to his welfare and best interests).

We conclude that reasonable and fair-minded people could reach the best interest finding in support of the juvenile court's disposition.

**D.      No Abuse of Discretion**

With sufficient evidence to support the juvenile court's disposition findings, and in light of J.H.'s history of committing violent crimes, the court did not abuse its discretion by committing J.H. to the TJJD.  *See In re W.J.P.*, 2021 WL 2931437, at *3 ("Generally, a trial court does not abuse its discretion in rendering a commitment order when a delinquent juvenile has engaged in some type of violent activity that makes the juvenile potentially dangerous to the public.").  J.H.'s commitment is consistent with the statutory purposes of the Juvenile Justice Code. *See* Tex. Fam. Code § 51.01; *see also In re J.P.*, 136 S.W.3d 629, 631 (Tex. 2004) ("[I]n the Juvenile Justice code, the best interests of children who engage in serious and repeated delinquent conduct are superseded to the extent they conflict with public safety.").

J.H.'s first two issues are overruled.

### III.   EXCLUSION OF EVIDENCE

In his third issue, J.H. contends that the juvenile court erred by excluding a 108-page Sunset Advisory Commission staff report about the TJJD.

The State objected to the report as irrelevant.  J.H. argued that the report was relevant because it "lays out the state of affairs at TJJD" and shows the "conditions at TJJD . . . especially in light of [J.H.'s] current medical conditions."  J.H. did not direct the juvenile court to any specific page of the report or identify any specific criticism of the TJJD in the report.  The court announced, "I'll review it, but I won't admit it into evidence."

On appeal, J.H. contends, "The report was critical information necessary for the court to evaluate best interest of the child and whether TJJD is capable of handling Appellant's special needs as opposed to within the community," and,

"The Commission's report is compelling evidence of the inappropriateness given Appellant's adverse medical condition of placement with TJJD." Again, J.H. does not refer this court to any particular page or statement within the report that might be relevant to the issues of J.H.'s best interest or the TJJD's inability to provide medical treatment to J.H.[4]

To preserve error, a party must state the grounds for the ruling sought from the trial court with sufficient specificity to make the court aware of the complaint. Tex. R. App. P. 33.1(a)(1)(A). When a party offering a voluminous exhibit as evidence is faced with an objection, it is the offering party's duty to explain to the trial court which specific portions of the exhibit are admissible and why:

> The trial court need never sort through challenged evidence in order to segregate the admissible from the excludable, nor is the trial court required to admit only the former part or exclude only the latter part. If evidence is offered and challenged which contains some of each, the trial court may safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection.

*Jones v. State*, 843 S.W.2d 487, 492–93 (Tex. Crim. App. 1992).

A cursory review of the exhibit reveals some irrelevant evidence—i.e., evidence that has no tendency to make a fact of consequence more or less probable than it would be without the evidence, *see* Tex. R. Evid. 401—on the issues of J.H.'s best interest or the ability of the TJJD to care for his diabetes. For example:

- The board of the TJJD has not fully implemented or followed policies to advise and assist senior executives.
- The governing statutes for the TJJD contain terms that are not consistent with the person-first respectful language initiative.

---

[4] Nor does J.H. cite to any rule of evidence concerning relevancy. He cites only to rules of evidence concerning authentication and hearsay. He cites no case law.

14

- The TJJD's website has some nonfunctional hyperlinks.

Because this exhibit contains some irrelevant evidence, and J.H. did not specify which parts of the exhibit were relevant and should have been admitted, J.H. cannot complain about the juvenile court's exclusion of the entire exhibit. *See Jones*, 843 S.W.2d at 492–93; *see also In re A.R.G.*, 612 S.W.3d 691, 694–95 (Tex. App.—Texarkana 2020, pet. denied) ("The trial court should never be required to sift through challenged evidence[] to segregate admissible evidence from excludable evidence." (quotation omitted)).

J.H.'s third issue is overruled.

## IV.  CONCLUSION

Having overruled each of appellant's issues, we affirm the juvenile court's judgment.


/s/  Ken Wise
    Justice

Panel consists of Justices Wise, Zimmerer, and Poissant.

Publish — Tex. R. App. P. 47.2(b)