**Opinion filed January 9, 2025**



# In The

# Eleventh Court of Appeals

_____

## No. 11-23-00071-CV

_____

## IN THE MATTER OF T.L.H., A JUVENILE

**On Appeal from the County Court at Law**
**Brown County, Texas**
**Trial Court Cause No. JUV2501**

### M E M O R A N D U M   O P I N I O N

Appellant T.L.H.,[1] a juvenile, appeals the juvenile court's order revoking probation and committing him to the Texas Juvenile Justice Department (TJJD). *See* TEX. FAM. CODE ANN. § 54.05 (West 2022). In two issues, T.L.H. argues that (1) the juvenile court's findings were not supported by legally or factually sufficient evidence, and (2) his father, R.H., was not provided "reasonable notice" of the

---

[1]We refer to Appellant and his family by their initials as required by statute. *See* TEX. FAM. CODE ANN. § 56.01(j) (West Supp. 2024).

modification hearing as statutorily required. *See id.* §§ 51.115 (West 2022), 54.05. We affirm.

*Factual and Procedural History*

The State filed a petition alleging that on or about January 3, 2020, twelve-year-old T.L.H. engaged in delinquent conduct by committing the offense of arson, a second-degree felony. *See id.* § 51.03 (defining delinquent conduct); *see also* TEX. PENAL CODE ANN. § 28.02 (West 2019) (arson). Following a hearing on October 26, 2020, wherein T.L.H. pleaded true to the allegations, the juvenile court adjudicated T.L.H. as having engaged in delinquent conduct. *See* FAM. § 54.03 (adjudication hearing). T.L.H. was "placed on probation . . . for a period of 24 months," throughout which he was to remain in the custody of R.H. *See id.* § 54.04 (disposition hearing).

Five months later on March 4, 2021, the State filed a "Motion to Modify Disposition," alleging that T.L.H. violated a condition of his probation by engaging in conduct that "constitutes the offense of ARSON as defined in the Texas Penal Code." *See id.* § 54.05 (modification hearing). The juvenile court held a modification hearing, during which T.L.H. pleaded "true" to the allegations. At the conclusion of the hearing, the juvenile court amended T.L.H.'s conditions of probation to include placement in a residential treatment facility.

Another "Motion to Modify Disposition" followed on October 3, 2022, alleging that T.L.H. had over thirty unexcused absences from school between August 19, 2022, and September 30, 2022. According to the signed stipulation of evidence, T.L.H. pleaded "true" to the allegations, and his probation was extended from April 2023 to October 2023.[2]

---

[2]The reporter's record does not contain the transcript from the modification hearing on the State's second motion to modify. Apart from the change in the duration of T.L.H.'s probation, it is unclear from the clerk's record, what, if any, other terms of probation were modified.

2

On February 14, 2023, the State filed its third motion to modify, this time asking the juvenile court to commit T.L.H. to TJJD. The State alleged in its motion that T.L.H. violated three rules of probation: (1) he engaged in delinquent conduct on or about February 10, 2023, by committing the offenses of unauthorized use of a motor vehicle and evading arrest or detention; (2) he accrued thirty-four unexcused school absences between October 24, 2023, and February 10, 2023; and (3) he "destroyed and removed the GPS monitor from his leg." T.L.H. pleaded "not true" to the allegations.

At the modification hearing on the State's third motion, three Brownwood Police Department (BPD) officers testified in support of the first allegation. BPD Corporal Kristoval Salazar testified that on February 10, 2023, he responded to a call regarding a stolen blue 2014 Dodge Avenger. Approximately one hour after Corporal Salazar made contact with the vehicle's owner, BPD Sergeant Jesse Mares located the stolen vehicle in a Dollar General parking lot and attempted to initiate a traffic stop. Sergeant Mares testified that a pursuit ensued, and the driver of the stolen blue Dodge Avenger proceeded "at an excessive rate of speed," nearly colliding with another vehicle. Citing the driver's "recklessness," Sergeant Mares terminated the pursuit.

BPD Officer Jaylen Bocknite observed T.L.H. walking with a group of juveniles along a nearby road about ten minutes later. Officer Bocknite was aware that there was a Directive to Apprehend for T.L.H., so he took T.L.H. into custody and searched him. T.L.H. had a Smith & Wesson BB gun, three cell phones,[3] and a key to the stolen blue Dodge Avenger on his person. T.L.H. told Officer Bocknite that he "found the vehicle key . . . on the side of the road as he was walking," and he

---

[3]Corporal Salazar testified that the vehicle's owner created an inventory of missing items from the vehicle, which included a child's car seat and an iPhone 7. While the car seat was never recovered, Corporal Salazar found the stolen iPhone 7 in T.L.H.'s possession along with two other cell phones.

had planned to turn the key over to his probation officer. The stolen vehicle was found in an alleyway a few blocks away from where T.L.H. was stopped by Officer Bocknite.

Fifteen-year-old J.H. identified T.L.H. as the driver of the stolen blue Dodge Avenger who attempted to evade the police on February 10, 2023. J.H. testified that he and "[t]wo other little kids and another friend," were passengers in the vehicle at the time. T.L.H. ignored their requests to stop the vehicle until police were no longer in pursuit, then T.L.H. "slammed on the brakes" and let them out. J.H. testified that T.L.H. drove away and later rejoined the group on foot.

As evidence of the State's second allegation, Stacy Loftin, the Disciplinary Alternative Education Program (DAEP) administrator, testified that T.L.H. was referred to DAEP following "persistent misbehavior" at school. Loftin confirmed T.L.H. failed to attend school on each of the thirty-four days alleged by the State in its motion.

Taylor Kent, T.L.H.'s probation officer, testified to the third allegation and summarized T.L.H.'s unsatisfactory behavior on probation. Kent noted that T.L.H. was enrolled in counseling on October 27, 2020, the day after he was placed on probation, and less than two weeks later, T.L.H. was sent to DAEP for fighting at school. Two months after that, the State filed a motion to modify, alleging that T.L.H. had committed arson. T.L.H. pleaded "true" to the allegation and was placed in a residential treatment facility. However, T.L.H. did not successfully complete his placement, stopped attending counseling, and missed over a month of school. Following the State's second motion to modify predicated on T.L.H.'s failure to attend school, T.L.H. was continued on probation and ordered to meet weekly with Kent. Kent testified that in December 2022, T.L.H. was caught stealing from a local store, and T.L.H. informed Kent that he "did not want to get back into counseling" and "did not intend to go to school." T.L.H. was fitted with a GPS ankle monitor on

4

January 18, 2023, which he removed three weeks later—the day before evading police in the stolen Dodge Avenger.

According to Kent, prior to the modification hearing, T.L.H. threatened that "something bad" would happen if Kent could not "drop the[] charges on" him. Kent opined that T.L.H. had become more "reckless" and "careless" over time, and he no longer "seem[ed] to be as concerned with authority or what could happen, [or the] consequences to his actions." Kent testified that the probation department had "exhausted all resources" in an effort to rehabilitate T.L.H. in his current placement, and he was therefore recommending commitment to TJJD. On cross-examination, Kent was questioned regarding whether it would have been reasonable to pursue an inpatient psychiatric placement given T.L.H.'s alleged psychological diagnoses[4] and "childhood trauma." Kent maintained that T.L.H.'s behavioral issues at his previous residential facility and his overall demeanor toward authority rendered alternative placements inappropriate.

Prior to issuing its findings, the juvenile court observed that R.H. was not present for the hearing, although he had been provided notice, and it appointed T.L.H.'s counsel as guardian ad litem. The juvenile court found that T.L.H. violated each rule of probation as alleged in the State's motion and ordered T.L.H. committed to TJJD. In concluding that commitment was appropriate, the juvenile court further found that "[T.L.H.] is in need of rehabilitation and that the protection of the public and the child require this modification to the previous disposition," "reasonable efforts have been made to prevent or eliminate the need for the child's removal from the home," "while being placed back in his home[,] he has continuously failed to attend school[, h]e's removed his GPS monitor, and he's committed new felony offenses."

---

[4]T.L.H.'s counsel made several references to a psychological report but did not seek to admit the report into evidence.

This appeal followed.

*Sufficiency of the Evidence*

In his first issue, T.L.H. argues that the evidence was legally and factually insufficient to support the juvenile court's findings. *See* FAM. § 54.05(m)(1)(A)–(C).

A. *Standard of Review and Applicable Law*

All proceedings involving the delinquent conduct of children are governed by Title 3 of the Texas Family Code. *Id.* §§ 51.01–61.107. A juvenile court may modify a prior disposition order to commit a juvenile to TJJD when, as here: (1) a juvenile's prior disposition is based on delinquent conduct that, if he had been tried as an adult, would have constituted a felony offense; and (2) the juvenile court "finds by a preponderance of the evidence that the [juvenile] violated a reasonable and lawful order of the court." *Id.* § 54.05(f). When ordering commitment or placement outside of the home, the juvenile court is required to include in its order that:

> (A)  it is in the child's best interests to be placed outside the child's home;
>
> (B)  reasonable efforts were made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for the child to return home; and
>
> (C)  the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.

*Id.* § 54.05(m)(1)(A)–(C). The juvenile court, in rendering its decision, may consider "written reports from probation officers, professional court employees, . . . or professional consultants in addition to the testimony of other witnesses." *Id.* § 54.05(e); *In re J.F.E.*, No. 11-14-00071-CV, 2015 WL 1321878, at *3 (Tex. App.—Eastland Mar. 20, 2015, no pet.) (mem. op.).

6

The juvenile court has broad discretion to determine a suitable disposition for a juvenile found to have engaged in delinquent conduct, particularly in proceedings involving modification. *In re J.P.*, 136 S.W.3d 629, 632 (Tex. 2004); *J.F.E.*, 2015 WL 1321878, at *4. We will not disturb the juvenile court's disposition or modification of a disposition absent an abuse of discretion. *J.P.*, 136 S.W.3d at 632–33; *J.F.E.*, 2015 WL 1321878, at *4. A juvenile court abuses its discretion when it acts unreasonably or arbitrarily without reference to guiding rules or principles. *In re A.G.*, 292 S.W.3d 755, 759 (Tex. App.—Eastland 2009, no pet.); *see In re K.H.*, 682 S.W.3d 567, 575 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). We apply the civil standards in reviewing the legal and factual sufficiency of the evidence in a juvenile proceeding. *A.G.*, 292 S.W.3d at 761; *see K.H.*, 682 S.W.3d at 575. In our legal sufficiency analysis of the juvenile court's findings, we "look at all the evidence in the light most favorable to the finding," "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). Anything more than a scintilla of evidence is legally sufficient to support the findings. *K.H.*, 682 S.W.3d at 575. "With respect to the factual sufficiency of the evidence, we consider and weigh all the evidence and set aside the juvenile court's determination only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *A.G.*, 292 S.W.3d at 761.

B. *Analysis*

T.L.H. specifically argues the evidence was legally and factually insufficient to support the juvenile court's findings that (1) reasonable efforts had been made to prevent or eliminate the need for his removal from his home, and (2) he could not be provided the quality of care and level of support and supervision needed to meet

7

the conditions of probation while remaining in his home.[5] *See* FAM. § 54.05(m)(1)(B), (C).

### 1. *Reasonable Efforts Made*

T.L.H. first challenges the reasonableness of the efforts made by the juvenile probation department during his probation. He avers that "he was not enrolled into any additional programs by the juvenile probation department but rather was simply encouraged to go to school and counseling," therefore, it was "[u]nsurprising[]" that he "continued to disappoint until officers could simply state efforts were exhausted."

"Reasonable efforts" however, does not mean that all services must be explored. *K.H.*, 682 S.W.3d at 576. It is likewise well-established that, in a modification proceeding, the trial court need not exhaust all possible alternative placements out of the home prior to committing a juvenile to TJJD. *See id.* ("This Court and others have held that '[a] trial court is not required to exhaust all possible alternatives before sending a juvenile to the TJJD.'" (quoting *In re W.J.P.*, No. 01-19-00988-CV, 2021 WL 2931437, at *3 (Tex. App.—Houston [1st Dist.] July 13, 2021, no pet.) (mem. op.))); *In re H.C.*, 562 S.W.3d 30, 47 (Tex. App.—Texarkana 2018, no pet.) ("[T]he act of modification itself indicates an in-home alternative has been tried, and undoubtedly most trial courts would find these efforts reasonable *because they ordered them.*" (quoting *J.P.*, 136 S.W.3d at 632)); *see also In re G.B.*, No. 13-19-00581-CV, 2021 WL 3085990, at *2 (Tex. App.—Corpus Christi–Edinburg July 22, 2021, no pet.) (mem. op.) ("Under [Section 54.05], the trial court is not required to exhaust all possible alternatives to commitment before it modifies

---

[5]T.L.H. makes brief, cursory reference to the trial court's "best interest" finding under § 54.05(m)(1)(A); however, T.L.H.'s argument, as well as citations to the record and applicable authority, concern the trial court's findings pursuant to subsections (B) and (C). *See generally* FAM. § 54.05(m)(1)(A)–(C). Therefore, our analysis is limited to these two subsections. *See* TEX. R. APP. P. 38.1(i) (briefing requirements); *Luna v. State*, 687 S.W.3d 79, 101 (Tex. App.—Eastland 2024, pet. ref'd) ("Although we liberally construe briefs in the interest of justice, we are unable to discern the specific arguments raised by Appellant, and we will not brief his case for him.").

a disposition and commits a juvenile to TJJD."); *In re J.Y.*, No. 02-17-00092-CV, 2017 WL 3298301, at *4 (Tex. App.—Fort Worth Aug. 3, 2017, no pet.) (mem. op.) (concluding TJJD commitment appropriate although the evidence revealed there was a less restrictive, inpatient placement option because "a trial court need not consider alternative dispositions" in a modification hearing). A trial court may "decline third and fourth chances to a juvenile who has abused a second one." *J.P.*, 136 S.W.3d at 633; *see also In re V.L.T.*, 570 S.W.3d 867, 873 (Tex. App.—El Paso 2018, no pet.) (concluding the trial court did not abuse its discretion in committing juvenile to TJJD where "V.L.T.'s brief admits the need for treatment for his [post-traumatic stress disorder]," "[t]he probation officer testified that the best alternative for obtaining counseling was through the commitment to TJJD," and although there was also "testimony about the alternative programs," they were not recommended "due either to the eligibility criteria[ ] or the time needed to complete the programs").

The juvenile court in this case, with the support of the juvenile probation department, provided T.L.H. with multiple opportunities to prevent or eliminate the need for his removal from his home. After T.L.H. stipulated that he engaged in delinquent conduct by setting fire to a residence and was adjudicated, he was placed on probation in R.H.'s custody in October 2020. T.L.H. again engaged in delinquent conduct by committing arson, and in April 2021, his probation terms were modified to place him in a residential treatment facility. T.L.H. was unsuccessfully discharged from the placement facility, and he returned to his father's home, where he continued to refuse to attend counseling sessions or school before having his conditions modified for a second time. Additional reasonable efforts were made to prevent or eliminate the need for T.L.H.'s removal from his home when Kent began meeting with T.L.H. weekly, and T.L.H. was fitted for a GPS monitor. It was during this fourth opportunity, however, that T.L.H. violated several conditions of probation by

9

skipping school, removing his GPS monitor, and engaging in delinquent conduct by committing new offenses, which put others at risk.

Based on the severity of T.L.H.'s adjudicated offense, his unsuccessful discharge from placement, his removal of the GPS monitor, and his escalating inappropriate behavior while on probation, we conclude that more than a scintilla of evidence supports the juvenile court's finding that reasonable efforts were made to prevent or eliminate the need for T.L.H.'s removal from the home and to make it possible for him to return to his home. *See* FAM. § 54.04(i)(1)(A); *J.P.*, 136 S.W.3d at 632; *In re E.K.G.*, 487 S.W.3d 670, 678 (Tex. App.—San Antonio 2016, no pet.) (concluding TJJD was appropriate where juvenile had history of non-compliance and alternatives to commitment had been tried and failed); *see also In re J.M.G.*, No. 06-16-00011-CV, 2016 WL 9175816, at *4 (Tex. App.—Texarkana Nov. 29, 2016, no pet.) (mem. op.) ("Failure to complete a local treatment program successfully supports a finding that TJJD may be more appropriate than placing a juvenile into another local treatment program."); *In re B.L.B.*, No. 03-09-00264-CV, 2010 WL 2010805, at *5 (Tex. App.—Austin May 20, 2010, no pet.) (mem. op.) ("The juvenile court would not have abused its discretion in finding that B.L.B. had already been given an opportunity to complete her probation at home, that she had not succeeded, and that a different placement was now appropriate."); *In re V.J.*, No. 12-05-00324-CV, 2006 WL 1918181, at *3 (Tex. App.—Tyler July 12, 2006, no pet.) (mem. op.) (concluding same where juvenile had been placed in a secure detention facility, placed in an alternative school, and his probation conditions had been modified twice prior). Furthermore, based on our review of the record, we cannot conclude that the credible evidence supporting the trial court's finding is so weak or so contrary to the overwhelming weight of all the evidence as to be manifestly wrong and unjust. *See* FAM. § 54.04(i)(1)(B); *A.G.*, 292 S.W.3d at 761; *see also W.J.P.*, 2021 WL 2931437, at *3–4.

## 2. *Level of Care, Support, and Supervision in the Child's Home*

T.L.H. next disputes the juvenile court's finding that he could not be provided the quality of care, and level of support and supervision that he needs in his home to meet the conditions of probation. *See* FAM. § 54.05(m)(1)(C).

While T.L.H. is correct that no evidence was presented regarding where he had resided or the "appropriateness" of his father as his caregiver, his behavior was documented as deteriorating while living in the same home, under the same supervision. The evidence showed that since being placed on probation and while residing with his father, T.L.H. refused services, accrued more than thirty unexcused absences each school year, removed and destroyed his GPS monitor, threatened his probation officer, and engaged in delinquent conduct by committing the offenses of arson, unauthorized use of a motor vehicle, and evading arrest or detention. This is all evidence of inadequate supervision while living at home. *See In re J.H.*, 698 S.W.3d 101, 110 (Tex. App.—Houston [14th Dist.] 2024, no pet.) (concluding that repeatedly "engag[ing] in criminal conduct while living at home" could support the trial court's finding that the juvenile could not be provided the adequate level of care, support, and supervision in the home to meet the terms of probation); *H.C.*, 562 S.W.3d at 46–47 (concluding same where juvenile's behavior had become "progressively worse and more dangerous, all the while living at the same home and having the [same] support"); *E.K.G.*, 487 S.W.3d at 678 ("The record shows that E.K.G. lacks adequate supervision and structure in her home as evidenced, in part, by her failing to attend school, running away, and continuing to engage in delinquent conduct."). Viewing the evidence through the applicable standards of review, we conclude the evidence is legally and factually sufficient to support the juvenile court's findings. *See A.G.*, 292 S.W.3d at 761.

Accordingly, the juvenile court did not abuse its discretion by modifying T.L.H.'s probation and later ordering T.L.H.'s commitment to TJJD. *See J.P.*, 136

S.W.3d at 632; *see also* F<small>AM.</small> § 54.05(m)(1)(A)–(C).  We overrule T.L.H.'s first issue.

*Notice to Parent*

In his second issue, T.L.H. argues that reasonable notice was not provided to R.H. in advance of the modification hearing.  *See* F<small>AM.</small> §§ 51.115(c); 54.05(d). Section 54.05 requires that "reasonable notice" "be given to all parties," including the juvenile's parent or guardian, before the hearing on a motion to modify disposition.  *Id.* § 54.05(d).  Pursuant to Section 51.115, each parent is entitled to "reasonable written or oral notice that includes a statement of the place, date, and time of the hearing."  *Id.* § 51.115(c).  Neither provision requires service of process, and the trial court may proceed with a hearing to modify disposition in a parent's absence.  *Id.* §§ 51.115(c); 54.05(d).

Although not briefed by either party, we note the preservation implications here.  Juvenile cases are civil proceedings for which the Supreme Court of Texas is the court of last resort; however, they are also quasi-criminal.  *Ex parte A.V.*, 695 S.W.3d 16, 20 (Tex. App.—Eastland 2024, pet. denied); *see In re C.O.S.*, 988 S.W.2d 760, 765–66 (Tex. 1999).  Thus, the legal standards that apply to preservation of error in adult criminal proceedings also apply in juvenile proceedings.  *C.O.S.*, 988 S.W.2d at 765–66 (citing *Marin v. State*, 851 S.W.2d 275, 278–79 (Tex. Crim. App. 1993)); *see In re B.L.D.*, 113 S.W.3d 340, 351 (Tex. 2003) (reaffirming *C.O.S.*); *H.C.*, 562 S.W.3d at 39 ("[T]he Texas Supreme Court applied the preservation scheme set forth by the Texas Court of Criminal Appeals in *Marin* to juvenile cases.").  Texas criminal jurisprudence recognizes three categories of rights and requirements for error preservation: (1) rights that cannot be forfeited by inaction alone as they are "so fundamental to the proper functioning of our adjudicatory process"; (2) rights that, while "not forfeitable," are "'waivable' if the waiver is affirmatively, plainly, freely, and intelligently made"; and (3) "forfeitable"

rights, which are rights that "the trial court has no duty to enforce unless requested" and are waivable by a failure to call the trial court's attention to the error. *C.O.S.*, 988 S.W.2d at 765–66. The preservation requirements established in Rule 33.1 of the Texas Rules of Appellate Procedure "do not apply to rights falling within the first two categories." *Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014); *see* TEX. R. APP. P. 33.1 (preservation requirements). "Most rights fall into the third category—they are forfeitable." *Cruz v. State*, 698 S.W.3d 265, 268 (Tex. Crim. App. 2024).

We have yet to determine whether such claim concerning a juvenile's parent's alleged lack of notice of a modification hearing is one which requires preservation, but we need not make that determination today.[6] Assuming without deciding that T.L.H.'s claim has been preserved, his claim fails because the juvenile court's order unequivocally recited that R.H. received notice of the modification hearing: "Although duly and properly notified, the child's father, [R.H.], did not appear."[7] Recitals in the judgment are presumed correct and are binding unless proven false by the record. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013); *Carrasco v. State*, No. 11-18-00311-CR, 2020 WL 6790702, at *2 (Tex. App.—Eastland Nov. 19, 2020, no pet.) (mem. op., not designated for publication) ("The

---

[6]At least three of our sister courts have held that a juvenile's failure to object to a parent's or guardian ad litem's absence resulted in a lack of preservation (i.e., the claims were waivable); however, a *Marin* categorical analysis was absent from all three cases. *See In re C.A.G.*, 410 S.W.3d 923, 924 (Tex. App.—El Paso 2013, no pet.) ("[B]ecause C.A.G. did not object at trial to his mother's absence [at his adjudication hearing] or present his motion for new trial to the trial court, we conclude he has failed to preserve his complaint for appellate review."); *In re R.W.G.*, No. 02-02-00083-CV, 2003 WL 1564310, at *2 (Tex. App.—Fort Worth Mar. 27, 2003, no pet.) (per curiam) (mem. op.) ("Appellant made no objection at either of the [adjudication or disposition] hearings that his father was not present. Accordingly, the alleged arguable error was not preserved."); *R.M.R. v. State*, No. 01-01-00347-CV, 2001 WL 1555304, at *1–2 (Tex. App.—Houston [1st Dist.] Dec. 6, 2001, no pet.) (not designated for publication) ("Appellant did not object to the lack of notice to his guardian ad litem [prior to his modification hearing]. . . . Without objection to the lack of notice at the trial court, no error was preserved for review on appeal.").

[7]The trial court also stated at the hearing: "[T.L.H.'s] father has been present at, I think, one of the detention hearings, but notice has been provided."

13

presumption of regularity created by recitals in the judgment can be overcome only when the record otherwise affirmatively reflects that error occurred." (quoting *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984))); *see, e.g.*, *In re E.V.*, 225 S.W.3d 231, 234 (Tex. App.—El Paso 2006, pet. denied) (presuming notice was provided where the order transferring appellant to TJJD stated "due notice had been issued on all parties"). There is no evidence presented to the contrary in the record before us.

R.H.'s absence is not affirmative evidence that no reasonable notice was provided. *See In re D.B.*, 457 S.W.3d 536, 538–39 (Tex. App.—Texarkana 2015, no pet.) (concluding that recitations in the transfer order that notice was given to all parties was not defeated by evidence that a party in a juvenile proceeding was not present at the hearing). Further, the absence of a summons or service of process in the record is unavailing where neither are statutorily required here. *See* FAM. §§ 51.115(c), 54.05(d); *see also In re J.I.A.*, No. 01-12-00791-CV, 2013 WL 6670849, at *4 (Tex. App.—Houston [1st Dist.] Dec. 17, 2013, no pet.) (mem. op.) ("The defendant in a modification hearing is not entitled to service of process, but only to 'reasonable notice.'"); *In re T.E.*, No. 03-04-00590-CV, 2005 WL 1583463, at *2 (Tex. App.—Austin July 7, 2005, no pet.) (mem. op.) (acknowledging the same where service was not returned on a juvenile's parent before a modification hearing). Accordingly, on this record, we presume notice was provided, and because T.L.H. has not rebutted that presumption, we overrule his second issue.[8] *See Guerrero*, 400

---

[8]By two sentences in his brief, T.L.H. challenges the restitution order of $1000 against R.D. based on an alleged lack of notice to him of the modification hearing, which argument we rejected above. However, to assert an issue on appeal, an appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i); *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020). Even though reviewing courts are to interpret briefing requirements reasonably, parties asserting error on appeal must put forth some specific argument and analysis citing the record and authorities in support of their argument. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018). To the extent T.L.H. means to create

S.W.3d at 583; *see also In re J.B.*, No. 12-13-00270-CV, 2014 WL 2601716, at *2 (Tex. App.—Tyler June 11, 2014, no pet.) (mem. op.) (concluding notice was provided where transfer order contained language stating the hearing had been held "[a]fter due notice had been issued on all parties").

### *This Court's Ruling*

We affirm the order of the juvenile court.


W. BRUCE WILLIAMS
JUSTICE


January 9, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

an independent issue for appellate review, the two sentences contain no citation to or application and analysis of the relevant rules or authority. *See* TEX. R. APP. P. 38.1(i).  Therefore, we conclude the sub-issue has been inadequately briefed.  *See id.*; *Bellamy v. Allegiance Benefit Plan Mgmt., Inc.*, 696 S.W.3d 751, 762 n.6 (Tex. App.—Eastland 2024, no pet.) ("Because this argument is devoid of any citations to appropriate authority, it is waived; therefore, we will not address it.").