**Opinion issued February 6, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00175-CV

_____

## IN THE MATTER OF D.M.

---

### On Appeal from the County Court at Law No. 6
### Fort Bend County, Texas
### Trial Court Case No. 20-CJV-024199

---

## MEMORANDUM OPINION

Appellant D.M. appeals the juvenile court's order revoking his probation and committing him to the Texas Juvenile Justice Department ("TJJD").[1]  In two issues,

---

[1]  To maintain his privacy, we refer to appellant by his initials.  *See* TEX. FAM. CODE § 56.01(j) ("Neither the child nor his family shall be identified in an appellate opinion rendered in an appeal . . . related to juvenile court proceedings under this title.").

D.M. contends (1) the trial court abused its discretion by committing him to TJJD because his supervision and support needs could be met at home and (2) he received ineffective assistance of counsel. We affirm.

## I.    Background

In February 2021, the juvenile court found that 15-year-old D.M. had engaged in delinquent conduct by assaulting two family members—his grandmother and his brother. The first assault against D.M.'s grandmother was a misdemeanor. *See* TEX. PENAL CODE § 22.01(a)(1), (b). The second assault against D.M.'s brother was a felony because it involved impeding breath or circulation by applying pressure to the throat or neck. *See id.* § 22.01(b)(2)(B).

The juvenile court placed D.M. on six months' probation. Among other things, the probation conditions required D.M. to not commit any new offenses, to go to school, to follow the school's rules, and to stay home or be accompanied by a guardian except when attending school, a school activity, or a church function. Based on violations of these conditions, including a second assault against his grandmother, D.M.'s probation was extended three times.

Two of the extension orders required D.M. to participate in intensive supervision programs at secure residential facilities—the Fort Bend County Juvenile Leadership Academy ("JLA") and the Center for Success and Independence at the Rockdale Academy ("Rockdale"). But D.M. completed neither program. The

2

juvenile court found that D.M. violated JLA rules by "receiving 9 write-ups" for failing to follow instructions, threatening peers and staff, and having violent outbursts. D.M. was "unsuccessfully discharged" from Rockdale for "failure to adjust to the rules and regulations of the program."

In August 2022, D.M. was living with his grandmother but still on probation when a student at D.M.'s school alleged that D.M. had threatened to kill him. A school resources officer investigated the threat and interviewed D.M. at home. After initially denying the allegation, D.M. admitted threatening the student. The school resources officer found brass knuckles in D.M.'s backpack and a knife in D.M.'s closet. D.M. was suspended from school.

The State moved to revoke D.M.'s probation. The State alleged that by threatening the other student, D.M. had violated school rules and committed a new offense. *See* TEX. PENAL CODE § 22.07(a)(2) (defining the offense of "terroristic threat" as threatening violence that places a person "in fear of imminent serious bodily injury"). The State also alleged that D.M. had violated the stay-home requirement of his probation when he twice left home without a guardian and for an impermissible purpose. D.M. pleaded "not true" to the State's allegations.

At the hearing to adjudicate the alleged probation violations, the State presented two witnesses—the school resources officer and D.M.'s probation officer. The school resources officer testified about the investigation of D.M.'s alleged

terroristic threat.[2]  And the probation officer testified about D.M.'s stay-home violations.  The probation officer explained that he knew D.M. left home on a certain date because D.M.'s great grandmother reported the violation and D.M. wore an ankle monitor that tracked his movement.  When D.M. left home again three days later, the probation officer had a general idea where D.M. might be based on routes he had taken before.  The probation officer found D.M. about a mile from his grandmother's house.  D.M. claimed he was walking to school, even though he had been suspended.

After the parties rested on adjudication, the juvenile court found that D.M. had violated the terms of his probation by twice leaving home without a guardian for reasons other than to attend school, a school activity, or a church function.  The juvenile court made no finding on whether D.M. violated probation by threatening the other student.

The juvenile court proceeded to the disposition phase.  After testimony from several witnesses about the efforts to provide D.M. individual and trauma-based counseling, intensive supervision, and other services that would help him complete probation and improve his continued behavioral issues, the juvenile court signed an

---

[2]   After the school resource officer testified, the parties realized that his testimony had not been sworn.  Over D.M.'s objection and request that the unsworn testimony be stricken, the juvenile court concluded that any error could be cured and brought the officer back to swear that his testimony would have been the same had it been given under oath.

order revoking D.M.'s probation and committing him to TJJD for an indeterminate time not to exceed when he turns 19 years old or until discharged by law. Although D.M.'s grandmother and great grandmother testified that D.M. had their support and could successfully complete probation at home, the juvenile court found it was in D.M.'s best interest to be placed outside the home, reasonable efforts were made to prevent or eliminate the need for D.M. to be removed from home, and D.M. could not receive the support and supervision he needed at home.

## II. Commitment to TJJD

In his first issue, D.M. argues that the juvenile court abused its discretion by committing him to TJJD because his probation violations were minor and his supervision and support needs could be met in his grandmother's home.

### A. Applicable law and standard of review

A juvenile court has broad discretion to determine a suitable disposition for a juvenile found to have engaged in delinquent conduct, particularly in proceedings involving modification. *See In re K.H.*, 682 S.W.3d 567, 575 (Tex. App.—Houston [1st Dist.] 2023, pet. denied); *In re E.K.G.*, 487 S.W.3d 670, 673 (Tex. App.—San Antonio 2016, no pet.). When a juvenile's prior disposition is based on a finding that he engaged in delinquent conduct that would be a felony offense, the court may modify the disposition and commit the child to TJJD if it "finds by a preponderance of the evidence that the child violated a reasonable and lawful order of the court."

TEX. FAM. CODE § 54.05(f); *see* TEX. PENAL CODE § 22.01(b)(2)(B) (making family violence assault by impeding breath or circulation a felony).  The order committing the child to TJJD must include a determination that:

(A)   it is in the child's best interests to be placed outside the child's home;

(B)   reasonable efforts were made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for the child to return home; and

(C)   the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.

TEX. FAM. CODE § 54.05(m)(1).

We review the juvenile court's decision to modify a disposition for an abuse of discretion.  *See In re J.P.*, 136 S.W.3d 629, 632 (Tex. 2004); *In re C.J.*, No. 01-18-00771-CV, 2009 WL 1886614, at *2 (Tex. App.—Houston [1st Dist.] July 2, 2009, no pet.) (mem. op.).  The court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles.  *In re K.H.*, 682 S.W.3d at 575; *In re C.J.*, 2009 WL 1886614, at *2.  Legal and factual sufficiency of the evidence are relevant factors in assessing whether the court abused its discretion.  *In re K.H.*, 682 S.W.3d at 575; *In re C.J.*, 2009 WL 1886614, at *2; *see also In re R.L.R. III*, No. 14-06-00926-CV, 2008 WL 323758, at *2 (Tex. App.—Houston [14th Dist.] Feb. 7, 2008, no pet.) (mem. op.) (reviewing modification of

disposition for abuse of discretion after deciding whether evidence was sufficient to support finding that juvenile violated a condition of probation).

When reviewing legal sufficiency, favorable evidence is considered if a reasonable and fair-minded factfinder could consider such evidence, and evidence contrary to the court's finding is disregarded unless a reasonable and fair-minded factfinder could not disregard it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005); *see also In re C.J.*, 2009 WL 1886614, at *2. When reviewing factual sufficiency, we consider and weigh all the evidence, and will set aside the judgment only if the findings are so weak or so against the great weight and preponderance of the evidence as to be clearly unjust. *See In re K.H.*, 682 S.W.3d at 575; *In re C.J.*, 2009 WL 1886614, at *2.

**B.     Sufficiency of the evidence**

D.M. argues that the juvenile court abused its discretion by committing him to TJJD because the evidence does not support the court's best interest, reasonable efforts, and quality of in-home care findings. Construing D.M.'s brief liberally,[3] we understand D.M.'s argument as being that the adjudicated violations of his probation—two violations of the stay-home requirement—were "minor," and considering that the violations were only "minor," there was no showing that he

---

[3]     The Supreme Court of Texas has instructed that courts should construe briefs liberally to avoid disposing of issues without reaching the merits when possible. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008).

7

could not successfully complete his probation in his grandmother's home. We disagree.

The record contains evidence that adequately supports the juvenile court's finding that placement outside the home was in D.M.'s best interest. *See* TEX. FAM. CODE § 54.05(m)(1)(A). The State presented evidence of D.M.'s ability and inclination to undermine his grandmother's supervision and the conditions of his probation by assaulting his grandmother a second time, repeatedly leaving her home without permission, and engaging in other inappropriate behavior like threatening persons. *See In re E.K.G.*, 487 S.W.3d at 678 (determining continuous violations of probation conditions while at home suggest placement outside the home is in the child's best interest).

The record also contains evidence that reasonable efforts were made to avoid placing D.M. outside the home. *See* TEX. FAM. CODE § 54.05(m)(1)(B). D.M.'s original disposition was six months' probation at home, during which time he was to live with his grandmother. D.M. initially did well on probation in his grandmother's home but later reverted to behavior that was "defiant," "aggressive," and "confrontational." One month after he was placed on probation, D.M. assaulted his grandmother a second time and was detained. Based on this new offense, D.M.'s probation was extended, and he was placed in JLA, a secure residential facility. His probation was extended twice more because of continued noncompliance and

8

aggressive behavior, and he was unsuccessfully discharged from not just JLA but also Rockdale.

After being unsuccessfully discharged from the secure residential facilities, D.M. was placed back in his grandmother's care, in part, because his behavior precluded other placements. Even though D.M. received counseling and other services through the probation department, he remained unwilling to conform his conduct to what the probation order required while in the home environment. *See, e.g., In re V.L.T.*, 570 S.W.3d 867, 873 (Tex. App.—El Paso 2018, no pet.) (affirming trial court's modification sending child to TJJD after probation department attempted trauma counseling, deferred prosecution, and intensive supervision); *In re E.K.G.*, 487 S.W.3d at 678 (recognizing multiple alternative dispositions made before placement outside the home amounted to reasonable efforts to avoid removal of the child); *see also In re J.P.*, 136 S.W.3d at 632 ("[T]the act of modification itself indicates an in-home alternative has been tried, and undoubtedly most trial courts would find these efforts reasonable *because they ordered them*." (emphasis in original)). The juvenile court did not have to "exhaust all possible alternatives" before committing D.M. to TJJD. *In re J.R.C.*, 236 S.W.3d 870, 875 (Tex. App.—Texarkana 2007, no pet.).

The juvenile court also could reasonably determine that the level of care, support, and supervision in the grandmother's home was not meeting D.M.'s needs

9

or enabling him to complete probation based on his continued disregard for the conditions of his probation and aggressive behavior. D.M.'s grandmother and great grandmother both acknowledged as much. And while the record shows that D.M.'s family was loving and supportive, actively participated in the services offered to D.M., and wanted D.M. to continue his probation at home, that evidence is not so overwhelmingly contrary to the juvenile court's findings that the disposition order is manifestly unjust. *See In re J.D.S.*, No. 04-15-00540-CV, 2016 WL 3342137, at *3 ("The trial court is in the best position to determine a [guardian's] ability to adequately supervise the juvenile.").

In sum, the evidence at the disposition hearing and D.M.'s probation history is legally and factually sufficient to support the juvenile court's findings that placement outside the home was in D.M.'s best interest and was required to provide the level of support and quality of care that D.M. needs to meet his probation conditions after reasonable efforts to keep D.M. at home were made. *See* TEX. FAM. CODE § 54.05(m). Therefore, we hold the juvenile court did not abuse its discretion by modifying D.M.'s disposition and committing him to TJJD.

We overrule D.M.'s first issue.

## III. Assistance of Counsel

In his second issue, D.M. argues that trial counsel provided ineffective assistance because she did not present witnesses or other evidence to rebut the

alleged probation violations and thus effectively conceded the adjudication portion of the proceedings. D.M. argues that trial counsel was also ineffective for not developing evidence to mitigate the State's case for commitment to TJJD.

## A. Applicable law and standard of review

Although juvenile delinquency proceedings are civil proceedings governed by the Texas Family Code, they are quasi-criminal in nature. *See In re M.P.A.*, 364 S.W.3d 277, 282 n.2 (Tex. 2012); *In re R.J.H.*, 79 S.W.3d 1, 6 (Tex. 2002). A juvenile is entitled to effective assistance of counsel in such proceedings. *See In re Z.Q.*, No. 14-12-00129-CV, 2013 WL 176116, at *2 (Tex. App.—Houston [14th Dist.] Jan. 17, 2013, pet. denied) (mem. op.); *In re J.M.S.*, 43 S.W.3d 60, 63 n.1 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

The effectiveness of counsel's representation is reviewed under the familiar two-prong *Strickland* standard. *See, e.g.*, *In re D.A.O.*, No. 03-09-00483-CV, 2010 WL 3271812, at *2–3 (Tex. App.—Austin Aug. 19, 2010, no pet.) (mem. op.) (applying standard from *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984), in reviewing counsel's representation at hearing to modify juvenile disposition). To prevail under *Strickland*, the juvenile must show by a preponderance of the evidence that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–

11

88, 694; *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). Our review of counsel's representation is highly deferential. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). We presume counsel's conduct fell within the wide range of reasonable professional assistance and will find counsel's performance deficient only if the conduct is so outrageous that no competent attorney would have engaged in it. *Andrews*, 159 S.W.3d at 101. The unprofessional conduct must undermine confidence in the outcome. *Bone*, 77 S.W.3d at 833.

Because we cannot speculate beyond the record provided, any allegation of ineffectiveness must be firmly founded in the record. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *see Anderson v. State*, 193 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Thus, it is critical that the juvenile obtain the necessary record in the trial court to rebut *Strickland*'s presumption that counsel's conduct was strategic. *See Thompson*, 9 S.W.3d at 814. Direct appeal is often an inappropriate forum for this type of claim because the record may be underdeveloped and not show the facts related to the reasonableness of counsel's decisions. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *see also Bone*, 77 S.W.3d at 833 (recognizing that, "[i]n the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel" (quotation omitted)).

**B.     Failure to investigate and present evidence rebutting probation violations**

D.M. argues that trial counsel's representation during the adjudication hearing "amounted to nothing" because she did not present witnesses or other evidence challenging the State's allegation that he violated the conditions of his probation. But D.M.'s complaint of ineffectiveness is not shown in the record.

As D.M. acknowledges, trial counsel challenged the credibility of the State's witnesses through cross-examination on the alleged probation violations, moved to strike the unsworn testimony from the school resources officer, and made several other objections to the admissibility of the State's evidence.  Based on her cross-examinations and objections, counsel argued in closing that the State had not met its burden of proof as to any alleged probation violation.  Her closing argument addressed the alleged probation violations individually and offered reasons why the juvenile court should find against the State on each allegation.  And the juvenile court impliedly rejected some of the State's evidence when it declined to adjudicate D.M.'s alleged threat against the other student.

The record is silent as to why trial counsel decided to put the State to its burden of proof rather than call defense witnesses or offer exhibits into evidence.  D.M. did not move for a new trial or otherwise develop his ineffective assistance claim in the juvenile court.  While D.M. asserts on appeal that counsel should have done more to investigate potential defenses, he does not say what that investigation would have

revealed. On that matter the record is also silent. *See Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ("A claim for ineffective assistance based on trial counsel's general failure to investigate the facts of the case fails absent a showing of what the investigation would have revealed that reasonably could have changed the result of the case."). Considering the record's silence, we must presume that counsel's actions were motivated by sound trial strategy. *See Thompson*, 9 S.W.3d at 813–14 (a silent record that does not explain counsel's actions cannot overcome the strong presumption of reasonable assistance). Nothing in the record compels a conclusion that counsel's performance at the adjudication hearing fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88.

Because D.M. has not met *Strickland*'s first prong, he has not shown that trial counsel was ineffective at the adjudication hearing. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (appellant's "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong").

## C. Failure to present evidence rebutting the need for commitment to TJJD

D.M. also argues that trial counsel was ineffective at the disposition hearing because she did not present evidence "mitigating" the need for commitment to TJJD. We understand D.M. as complaining that counsel should have offered evidence that D.M. could receive the quality and level of support and supervision he needed at

home. We note counsel called D.M.'s grandmother and great grandmother to testify about D.M.'s family support and home environment. She also cross-examined the State's witnesses about alternatives to commitment to TJJD. The record is silent as to what more counsel could or should have offered. On such a silent record, we cannot say that counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *cf. Bone*, 77 S.W.3d at 834–35 (rejecting ineffective assistance claim because appellant failed to show that other mitigating evidence existed). Consequently, D.M. has not met *Strickland*'s first prong and has not shown that counsel was ineffective at the disposition hearing. *See Williams*, 301 S.W.3d at 687.

We overrule Appellant's second issue.

## IV.   Conclusion

We affirm the trial court's order revoking D.M.'s probation and committing him to TJJD.

Andrew Johnson
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.